**MOUNT SINAI MEDICAL CENTER OF GREATER MIAMI, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 260–86C.

United States Claims Court.

Aug. 9, 1991.

Keith Anderson, Washington, D.C., for plaintiff.

Terrence S. Hartman, with whom was David M. Cohen, Director, Commercial Litigation Branch and John R. Bolton, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., for defendant. Henry Goldberg and Marcus Christ, Office of General Counsel, Dept. of Health and Human Services, of counsel.

## ORDER

SMITH, Chief Judge.

This case comes before the court on defendant's Motion for Rehearing and/or to Dismiss. This motion follows the court's denial of defendant's original Motion to Dismiss, *Mt. Sinai Medical Center, Inc. v. United States*, 13 Cl.Ct. 561 (1987). The court granted defendant enlargements of time from November 20, 1987 through July 22, 1988 before the Motion for Rehearing was filed. Plaintiff was granted various enlargements of time before it filed its opposition on July 28, 1989. After seeking 12 additional enlargements of time from August 8, 1989 to April 10, 1990, defendant still has not filed a reply to plaintiff's opposition. At this point the court deems that defendant has waived its opportunity to reply and feels that disposition of this matter is overdue.

As this court stated in *Weaver–Bailey Contractors, Inc. v. United States*, 20 Cl. Ct. 158 (1990), "[a] motion for a new trial in a nonjury case or a petition for rehearing should be based upon manifest error of law or mistake of fact, and a judgement should not be set aside except for substantial reasons" *Id.* citing Wright & Miller, *Federal Practice and Procedure, Civil section 2804.* Additionally, "[t]o the extent that the motion for reconsideration merely reasserts ... arguments previously made ...,

all of which were carefully considered by the court ... there is no reason to vacate the Court's earlier Opinion and Order." *Frito–Lay of Puerto Rico, Inc. v. Canas,* 92 F.R.D. 384, 391 (D.C. Puerto Rico 1981).

In its present motion defendant claims that "the Supreme Court of the United States and the United States Court of Appeals have recently issued opinions which confirm that this court lacks jurisdiction over the subject matter of plaintiff's complaint." Def's. Br. filed July 22, 1988 at 1. Having examined the authority to which defendant cites, the court finds that defendant makes no new arguments and that there is no manifest error of law or mistake of fact which would require a reconsideration of this court's previous opinion or a dismissal of this case for lack of jurisdiction. For the reasons set forth below, defendant's motion is denied.

## FACTS

Because of the complexity of the issues involved, a brief recitation of the procedural scheme under the Medicare Program as well as the facts specific to this case is appropriate.

### Medicare Program

Plaintiff, Mount Sinai Medical Center of Greater Miami, Inc. (hereinafter Mount Sinai or provider), is a not-for-profit hospital serving medicare beneficiaries pursuant to a contract with the Secretary of the Department of Health and Human Services (Secretary). Plaintiff's claims arise under the Medicare Program. This program was created to help provide health care for the aged and other qualified individuals. Title XVIII of the Social Security Act, codified at 42 U.S.C. § 1395 *et seq.*

During the time relevant to this case, the Medicare Program was set up so that at the end of the fiscal year hospitals such as Mount Sinai would submit a cost report detailing annual costs and requests for reimbursement to a fiscal intermediary[1].

---

1. A fiscal intermediary is most often a private organization which contracts with the Secretary to provide various services. These services include determining the amount of reimbursement due providers and making the interim and final payments for each cost year. The fiscal

The intermediary audits cost reports for compliance with the applicable federal regulations. The intermediary then issues a Notice of Program Reimbursement (NPR) which reflects the amount to which the intermediary believes the provider is entitled.

If the provider disagrees with the NPR, it may appeal to the Provider Reimbursement Review Board (PRRB), an adjudicative body within the Department of Health and Human Services. The provider may only appeal if certain jurisdictional prerequisites are met: 1) the provider is dissatisfied with a final determination of its fiscal intermediary; 2) the amount in controversy is $10,000 or more; and, 3) the provider's request for a PRRB hearing is filed within 180 days after notice of the fiscal intermediary's final determination. 42 U.S.C. § 1395oo (1982). If the provider is dissatisfied with the PRRB decision it may appeal that decision to a federal district court.

*Mount Sinai's Claims*

In the instant case Mount Sinai has two claims, the first is for reimbursement of malpractice insurance costs, and the second is for reimbursement of assessments under the Florida Patient's Compensation Fund (FPCF).

As to Mount Sinai's first claim, on June 1, 1979, the Secretary issued a new regulation (the 1979 malpractice rule) which changed the way in which malpractice insurance costs were reimbursed. In its 1980–82 cost reports, Mount Sinai did not challenge the 1979 malpractice rule but accounted for its medicare related malpractice insurance costs pursuant to that rule. In 1985 *Lloyd Noland Hosp. & Clinic v. Heckler*, 762 F.2d 1561 (11th Cir.1985), invalidated the 1979 malpractice rule.

Mount Sinai seeks reimbursement of malpractice costs incurred during 1980–82 at the rate it should have been reimbursed but for the invalidated 1979 regulation. Because the 180-day time limit for review

to the PRRB had long passed, that board did not have jurisdiction to consider the reimbursement. Without the PRRB's decision Mount Sinai may not appeal to a federal district court.

As to Mount Sinai's second claim, the Florida Legislature created the Florida Patient's Compensation Fund in response to a crisis in Florida's malpractice insurance industry. The fund was established as a self-insuring trust fund for Florida health care providers. From 1982 to 1986 Mount Sinai was assessed $6,136,368 by the FPCF. Mount Sinai claims that the assessments at issue are directly related to the cost years 1976–82. Mount Sinai seeks to allocate the assessments to those cost years.

In order to do this Mount Sinai sought to have the FPCF claims added to the cost reports for 1976–79 which were pending at the PRRB. The PRRB refused to consider those claims because they were never included in the cost reports for those years. Mount Sinai attempted to reopen the cost reports for 1976–82 with its fiscal intermediary. The intermediary declined to reopen those cost reports. It is this refusal to reopen the cost reports for 1976–82 for which Mount Sinai seeks damages in this court.

DISCUSSION

In its previous decision this court found that it had jurisdiction because Mount Sinai had no other avenue of review from the denial by the intermediary. While section 1395oo gives jurisdiction for the review of PRRB decisions to the federal district courts, this court still has jurisdiction where a provider does not have the option of going to the PRRB. Mount Sinai did not have that option. The doctrine of exhaustion of remedies cannot be used to bar plaintiff when no administrative remedies exist. Mount Sinai is not required to seek non-existent administrative remedies, and therefore, the Claims Court, under the Tucker Act, 28 U.S.C. § 1491 (1982), is an appropriate forum.

---

intermediary thus serves both an audit and a comptroller function. In this case Blue Cross

and Blue Shield of Florida is the fiscal intermediary for plaintiff.

The government makes two arguments as to why this court should reconsider its previous opinion: first, the jurisdiction of this court has implicitly been taken away because Congress expressly placed jurisdiction to entertain these claims elsewhere; and, second, since Mount Sinai *could* have gotten district court review, this court has no jurisdiction.

### The Harris and Fausto Decisions

For its first argument the government relies on *Harris v. United States*, 841 F.2d 1097 (Fed.Cir.1988) and *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) *reh. den. United States v. Fausto*, 485 U.S. 972, 108 S.Ct. 1250, 99 L.Ed.2d 448 (1988).

In *Harris,* the Federal Circuit affirmed the dismissal of an action by a government employee in federal district court where the employee was seeking Environmental Differential Pay (EDP). The court examined the question of preemption of jurisdiction by a collective bargaining agreement and concluded that the more specific provisions of the Civil Service Reform Act of 1978 [2] (CSRA) effect a repeal by implication of the Tucker Act. The court stated, " ... repeal by implication is highly respectable and not a novelty." *Id.* at 1101.

The *Harris* opinion is based upon the Supreme Court's *Fausto* decision. That case involved a money claim by an "excepted" employee who had no appeal right to the Merit Systems Protection Board under the CSRA. The plaintiff sued in the Claims Court under the Back Pay Act, 5 U.S.C. § 5596. The Supreme Court upheld the Claims Court's finding that the CSRA took away whatever jurisdiction the Claims Court had previously. The Court noted that the challenge to the court was the classic judicial task of reconciling laws and that the doctrine that repeals by implication are not favored was inapplicable. 484 U.S. 439 at 453, 108 S.Ct. 668 at 676.

The decisive fact in the Supreme Court's analysis of the CSRA was that, although Congress deals explicitly with Fausto's category of employment, nonpreference members of the excepted service, it specifically omitted giving members of this category the right to have suspensions reviewed. 108 S.Ct. at 672. Based on the "comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in the provisions for administrative and judicial review...," the Court concluded that Congress intended to preclude judicial review of this type of personnel action. *Id.* at 673. Thus, the Supreme Court found that Congress intended the remedies in the CSRA to be exclusive. From this the government argues that a statute which expressly directs that certain claims be pursued in another tribunal, implicitly repeals consent to sue under the Tucker Act.

The Federal Circuit recently reexamined this same problem in regard to the Claims Court's jurisdiction over a collateral attack on a court-martial conviction. *Matias v. United States*, 923 F.2d 821 (Fed.Cir.1990). The plaintiff in that case was seeking correction of his military records by voiding his court-martial, thereby obtaining back pay for wrongful discharge. The government made four arguments, similar to the argument presented here, that certain enactments by Congress eliminated the Claims Court's Tucker Act jurisdiction over that case. The Federal Circuit found that the enactments of Congress did not create "a comprehensive, precisely drawn, detailed statutory scheme, effecting a revocation of collateral review." *Id.* at 825. Finding that the Claims Court had jurisdiction, the Federal Circuit stated, "[t]he arguments advanced here by the Government fail to demonstrate a comprehensive statutory revision demonstrating Congressional intent, such as that found in *Fausto*, to eliminate the jurisdiction of the Claims Court to hear this case." *Id.*

In *Harris* the Federal Circuit noted that the CSRA contained provisions for resolving grievances arising under collective bargaining agreements and "[a]ll such provisions shall be the exclusive procedures for

---

**2.** Pub.L. No. 95–454, 92 Stat. 111, codified in various sections of Title 5, United States Code.

resolving grievances." 5 U.S.C. § 7121(a)(1). *Harris,* at 1100. There is no statutory or contractual language in the instant dispute that states that section 1395*oo* is to be an exclusive remedy.

The decision in *Fausto,* as discussed above, hinged on the fact that although Congress specifically considered employees in the same category as the plaintiff, it omitted giving those employees the right to judicial review. Unlike *Fausto,* the statutory review section in question here, section 1395*oo,* was never intended to be, and in fact is not, comprehensive and pervasive. Unlike the CSRA, section 1395*oo* does not explicitly deal with circumstances like Mount Sinai's and then specifically omit a right to judicial review. It, thus, does not preclude Claims Court jurisdiction in situations never contemplated by Congress. As this court noted in its original decision:

> The court is acutely aware of the historic role that it has inherited as part of the original jurisdiction of the Court of Claims. That role is to provide an ultimate monetary remedy against denials of right by the sovereign where Congress has provided no other forum. In a very real sense, we are the legal treasury of the federal judicial system. Those rights not accounted for elsewhere must be dealt out here. To the extent that particular money claims against the United States are not within the exclusive jurisdiction provided by other statutory schemes, or are not precluded by the Tucker Act, the Claims Court can and must review those claims. The fact that the Tucker Act has not undergone any substantial changes since its enactment in 1887 is perhaps the most telling evidence of our continued congressional mandate in this regard.

*Mount Sinai* at 565.

As Judge Nettesheim has aptly noted in *St. Luke's Medical Center v. United States,* 22 Cl.Ct. 322 (1991) quoting from *John Muir Memorial Hospital, Inc. v. United States,* 221 Ct.Cl. 843 (1979):

A court's horror of leaving a party without a tribunal to enforce a constitutional claim is not a factor when the claim could have been asserted by following an available specified route to secure review.

*John Muir* at 845.

In the instant case we have one of those rare situations in the Medicare area where there is no "available specified route to secure review." The Court of Claims further noted:

> Under these canons, nobody seriously contends that 42 U.S.C. § 1395*oo*(f) does not in general cancel whatever consent was previously given to suits by providers here, except claims under $10,000 and claims as to fiscal years ended before June 30, 1973.

*John Muir* at 846. Here we have one of those *special* cases where district court review is unavailable and there are no administrative remedies to exhaust.[3]

Finally, *Harris* is further distinguishable from the present case because it does not involve a case where no remedy was available to the plaintiff other than the Claims Court. *Harris* involved construing a collective bargaining agreement which contained an express exclusion and merely choosing which avenue of review was proper, as opposed to denying a remedy altogether. As the court pointed out, "the issue is not whether anyone's judicial review is foreclosed, but only whether a claimant must pursue one route or another". *Id.* at 1099.

### The Bethesda Decision

For its second argument, defendant relies on *Bethesda Hosp. Asso. v. Bowen,* 485 U.S. 399, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988). Defendant argues that as a result this decision "a prerequisite to district court review of a provider reimbursement claim based upon the alleged invalidity of a regulation is that the PRRB first determine it is without authority to decide the matter because the claim involves a question of law or regulations." Def.'s Br. at 22. De-

---

3. The special circumstances found in this case are also not likely to arise again. In 1983 Congress adopted a prospective payment system

(PPS) whereby hospitals are paid predetermined rates for specific services, regardless of the costs incurred by the hospital.

fendant argues that Mount Sinai *could* have obtained district court review of its malpractice insurance claim after issuance of its NPRs had it timely challenged the 1979 Malpractice Rule before the PRRB and, upon receipt of a determination by the PRRB, filed suit in the district court within 60 days.

In *Bethesda* the provider challenged the validity of the same 1979 malpractice insurance regulation at issue here. The providers in their cost reports apportioned malpractice insurance costs and self-disallowed certain claims for malpractice insurance premiums costs. They later filed a timely request for a hearing before the PRRB to challenge the validity of the malpractice regulation. Because the amounts had been self-disallowed in the reports filed with the fiscal intermediary, and the providers failed to contest the regulation's validity in the cost report submitted to the fiscal intermediary, the PRRB determined it was without jurisdiction to hear the claims. The Supreme Court concluded that "petitioners could claim dissatisfaction, within the meaning of the statute without incorporating their challenge in the cost reports filed with their fiscal intermediaries." *Id.* 108 S.Ct. at 1259. The Supreme Court held that the PRRB had jurisdiction to hear the claim.

In *Mount Sinai* this court stated that there was no timely appeal of the cost reports because Mount Sinai was not aware of the need to include additional costs in those reports. Furthermore, "Plaintiff is not to be faulted for following the Secretary's current lawful regulations." *Id.* at 567. Indeed, as this court has previously stated, "[f]ar from being an ideal method of dispute resolution, litigation is, and should be the last hope, the final resort of civil men and women". *Malissa Co., Inc. v. United States,* 11 Cl.Ct. 389, at 391 (1986). To accept defendant's arguments would put plaintiffs such as Mount Sinai in the position of having to litigate every potential challenge to all rules and regulations promulgated by the Secretary for fear that the rule may later be invalidated and the plaintiff will be without any recourse for judicial review.

For the type of claims brought by Mount Sinai here, there is no statutory avenue for judicial review in the district courts. "A prerequisite for review in the district courts is a hearing at the PRRB and a prerequisite for a hearing at the PRRB is a timely filing of the claim within 180 days of the intermediary's final determination". *Id.* at 565. The basis for any legitimate claim here only arose long after the 180 days had passed.

### Bowen v. Massachusetts

Though not raised by the parties, the court feels compelled to raise *sua sponte* the question of whether jurisdiction exists after the Supreme Court's decision in *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) which was decided after this court's original decision in this case.

In *Bowen* plaintiff sought review in the district court of a decision by the Secretary of Health and Human Services that certain services did not qualify for reimbursement under the Medicaid program.

The Secretary argued that the Claims Court had exclusive jurisdiction over the case because this was a request for money damages. The Supreme Court majority found that the federal district court had jurisdiction because declaratory and injunctive relief were the remedies sought and the "monetary aspects" of the relief sought are not "money damages" as that term is used in the law, but merely an "adjustment". *Id.* at 108 S.Ct. 2731. "The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages'." *Id.* at 2732.

In the present case, this court has jurisdiction because the relief sought is money damages. The situation in this case is analogous to the example of a government contractor coming to this court to seek an equitable adjustment. Plaintiff is seeking additional monies because of the unforeseeability of the invalidation of the 1979 malpractice rule and the assessments of the FPCF. No equitable remedies are sought

here. Additionally, since the opportunity for reimbursement is passed and the plaintiff is foreclosed from seeking a "reimbursement," it is now seeking monetary compensation for the damage it suffered as a result of the enforcement of an invalidated regulation. This is no different than the relief a contractor seeks for the previous enforcement of an improper contractual interpretation. *See Wheeling v. United States*, 20 Cl.Ct. 659 (1990) *aff'd without op. Wheeling v. U.S.*, 928 F.2d 410 (Fed. Cir.1991).

Furthermore, though there is dicta in the *Bowen* decision which discusses Claims Court jurisdiction, *Bowen* involved only the question of whether the case could be brought in the district court, not whether the Claims Court had jurisdiction.

## CONCLUSION

The 1972 and 1974 amendments to the Medicare Act did not repeal Claims Court jurisdiction over Medicare reimbursement claims where there was no other viable means of judicial review. Since this specific remedy does not offer relief to Mount Sinai, the Tucker Act remedy remains firmly in place so as to provide substantive review of Mount Sinai's claims. The case law cited by defendant does not teach otherwise and this court retains jurisdiction over these claims. Defendant's motion is denied.

Defendant shall answer the complaint within 60 days of the date of this order.