**DEL PUERTO HOSPITAL, Madera Community Hospital, Mendocino Coast Hospital, Petaluma Valley Hospital, Queen of Angels Medical Center, Scenic General Hospital, Selma District Hospital, Washington Hospital, Wheeler Hospital, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1164 C.**

United States Claims Court.

Feb. 25, 1992.

Christopher R. Yukins, with whom were Asst. Director Terrence S. Hartman, Director David M. Cohen, Asst. Atty. Gen. Stuart M. Gerson, Dept. of Justice, Washington, D.C., and Marcus Christ, Dept. of Health and Human Services, for defendant.

OPINION

WIESE, Judge.

Plaintiffs are nonprofit corporations which own and operate acute care hospitals within the State of California. Their services include providing health care to Medicare beneficiaries pursuant to contracts with the Secretary of Health and Human

Services. In this action, plaintiffs seek reimbursement for that part of their medical malpractice insurance premium costs, attributable to Medicare-covered services performed in 1981–1983, which they claim the Secretary has erroneously denied them. The Government has moved to dismiss the suit for lack of jurisdiction; we grant the motion.

I

Prior to 1979, health care providers operating under the Medicare program received reimbursement for malpractice insurance costs based on the provider's Medicare-patient "utilization rate." This method required the inclusion of medical malpractice insurance costs in a general and administrative expense pool and an allocation from the pool based on the ratio of Medicare patient-days to total hospital patient-days.

In 1979, the Secretary issued a new regulation for the accounting treatment of medical malpractice insurance costs. In lieu of allocations from a pool based on utilization rates, the new regulation (effective for cost reporting periods beginning on or after July 1, 1979) called for direct allocation of a provider's insurance costs based on the ratio of medical malpractice insurance claims paid Medicare patients to medical malpractice insurance claims paid all patients. For the years in issue here, 1981–1983, plaintiffs applied for, and received, reimbursement of their malpractice insurance costs in accordance with this new, and more restrictive, 1979 insurance reimbursement rule.

The 1979 rule came under widespread attack in the courts, *see Tallahassee Memorial Regional Medical Center v. Bowen*, 815 F.2d 1435, 1441 n. 7 (11th Cir.1987) (listing cases), *cert. denied*, 485 U.S. 1020, 108 S.Ct. 1573, 99 L.Ed.2d 888 (1988), and in response to these challenges, the Secretary promulgated a new regulation which eliminated the 1979 rule and, in lieu thereof, established a new methodology for determining a provider's Medicare-allowable

medical malpractice insurance costs. This 1986 malpractice rule was made applicable to cost reporting periods beginning on or after July 1, 1979. In other words, it retroactively supplanted the 1979 rule.

In 1989, the standard for the determination of the reimbursable amount of medical malpractice insurance costs was once again changed. Prompted this time by the Supreme Court's decision in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (holding that the Secretary lacked authority under the Medicare program to promulgate provider cost-limiting regulations on a retroactive basis), the Secretary issued a ruling in January of 1989 restricting the application of the 1986 malpractice rule to cost reporting periods beginning after May 1, 1986. Health Care Financing Administration (HCFA) Ruling No. 89–1, Medicare & Medicaid Guide (CCH) ¶ 37,614 at 19,185 (Jan. 26, 1989).

As to the cost reporting periods occurring prior to this date, the ruling instructed fiscal intermediaries[1] "to allow properly pending, not otherwise settled, hospital reimbursement claims for malpractice insurance costs for cost reporting periods beginning before May 1, 1986 under the pre–1979 utilization method." *Id.* at 19,186. Thus, providers who had pending administrative or judicial challenges to the 1986 malpractice rule for cost reporting periods beginning before May 1, 1986 were to be reimbursed according to the more generous standard that prevailed prior to 1979—the Medicare-patient utilization rate.

The plaintiffs in this suit were not among those benefiting from the Secretary's 1989 ruling—they had not challenged the 1986 malpractice rule—and therefore their reimbursement of medical malpractice insurance premium costs for the years in issue remained unchanged. This suit was brought to recover the additional sums plaintiffs would have received had their malpractice insurance costs for those years been reimbursed at the pre–1979 utilization

1. A fiscal intermediary, usually a private insurance company, serves as the Secretary's agent for the purpose of reviewing, and authorizing payment of, the provider's claims for Medicare-cost reimbursement.

rate. Plaintiffs, in other words, seek the benefit of the Secretary's invalidation of the 1979 malpractice rule.

## II

In *Whitecliff, Inc. v. United States,* 210 Ct.Cl. 53, 58, 536 F.2d 347, 351 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977), this court's predecessor forum had occasion to state that "[w]here the Medicare statute provides for review, providers and courts must follow the specified procedures and limitations; in other cases, a provider may obtain judicial review, under the general jurisdictional provisions which are applicable, at least so far as to ensure compliance with statutory and constitutional provisions." In a footnote to that text, the court wrote: "For disputes over reimbursements with respect to fiscal periods ending on or after June 30, 1973, Congress has largely resolved the problem of judicial review; only disputes where the amounts in controversy are less than $10,-000 are left untreated by statute." Note 8, 210 Ct.Cl. at 58, 536 F.2d at 351.

These statements by the court spell out the only answer that can be reached here: we do not have jurisdiction in this matter. In 42 U.S.C. § 1395oo (1988), Congress has laid out a comprehensive scheme for the resolution of provider medicare cost-reimbursement disputes. Significantly, only the district courts figure in that scheme; not this court. § 1395oo(f). We play no part in the process except perhaps to hear provider cost disputes involving amounts less than $10,000. *See Appalachian Regional Hosps., Inc. v. United States,* 217 Ct.Cl. 1, 576 F.2d 858 (1978) (holding, but without discussion, that Court of Claims retained jurisdiction to hear post–1973 provider cost disputes under $10,000 because such claims fell below the threshold for district court review available under 42 U.S.C. § 1395oo ). Even as to such claims,

however, the assertion here of provider cost disputes going back to the period 1981–1983 would now be barred by the court's six-year statute of limitations. *See* 28 U.S.C. § 2501 (1988). Plainly, we do not have jurisdiction over this case.

Plaintiffs contest this conclusion. They maintain that the claims for reimbursement which they are asserting here did not arise until 1989—the year in which the Secretary set aside the 1979 malpractice rule and its successor, the 1986 malpractice rule. And since that date is one which occurred long after the time in which the 1981–1983 cost reports could have been reopened (either administratively or through a suit for judicial review in the district court) [2] plaintiffs maintain that this court is the only forum where their demands for monetary relief can now be enforced.

The argument is not sound. Under the administrative-judicial review structure provided for in Section 1395oo, it was always open to plaintiffs to contest the validity of the regulation (the 1979 malpractice rule) whose payments they now seek to augment. This could have been accomplished either by filing cost reports asserting entitlement to malpractice insurance costs based on the pre–1979 rule and then seeking review of the disallowance or by filing a conforming report (as plaintiffs, in fact, did) and then challenging the validity of the 1979 regulation in a hearing before the Provider Reimbursement Review Board.[3] *See Tallahassee Memorial Regional Medical Ctr.,* 815 F.2d at 1459–65.

Plaintiffs, however, pursued neither alternative. Hence, theirs was a conscious choice to accept the level of reimbursement afforded by the 1979 malpractice rule. And since the time in which plaintiffs could have challenged that rule has long since past, the matter is now closed. Plaintiffs have been paid all they are due.

---

**2.** Under 42 U.S.C. § 1395oo (a) a medicare provider may obtain administrative review of a fiscal intermediary's final cost determination by filing a request for hearing with the Provider Reimbursement Review Board within 180 days of the determination. Thereafter, to obtain judicial review, the provider must file a civil action within 60 days of the date on which notice

of the Board's final decision is received. *Id.* § 1395oo (f).

**3.** The Provider Reimbursement Review Board is authorized under 42 U.S.C. § 1395oo(a) to hear appeals by medicare providers on cost determinations made by fiscal intermediaries.

■ Nor can it be successfully argued that the judicial invalidation of the 1979 malpractice rule (and the Secretary's subsequent implementation of that result in his 1989 ruling) is, of itself, sufficient to invest plaintiffs with a renewed right to reimbursement under pre-1979 standards.

■ Those who are given the opportunity to vindicate their rights through suit and do not cannot claim the benefit of later events. *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (bondholder precluded by *res judicata* from contesting debt restructuring carried out under statute later held unconstitutional); *Reynolds Metals Co. v. United States*, 194 Ct.Cl. 309, 438 F.2d 983 (contractor, asserting rights under equal treatment clause, barred by limitations from obtaining benefit of favorable interpretation of identical contract term reached in other litigation), *cert. denied*, 404 U.S. 825, 92 S.Ct. 55, 30 L.Ed.2d 54 (1971). Since plaintiffs were not among those to whom the benefit of the 1989 Ruling was extended, they have no claim to any entitlement under it.

## III

The plaintiffs in this suit failed to pursue their claims through the mechanism Congress established for that purpose in 42 U.S.C. § 1395*oo*(a) and (f). To now contend, as plaintiffs do here, that this court can serve as a forum of last resort to hear claims for monetary relief that might otherwise go unaddressed "is to do violence to the whole doctrine of strict construction of the consent to be sued." *John Muir Memorial Hosp., Inc. v. United States*, 221 Ct.Cl. 843, 846 (1979).

For the reasons stated, defendant's motion to dismiss for lack of jurisdiction is granted.[4] The Clerk is directed to enter judgment dismissing the complaint.[5] No costs.

---

**4.** The court is aware that the problem presented by this case was resolved differently in *Mount Sinai Medical Center of Greater Miami, Inc. v. United States*, 13 Cl.Ct. 561 (1987), *reh'g denied*, 23 Cl.Ct. 691 (1991).

**5.** At the conclusion of the oral argument, plaintiffs' counsel moved to sever from the suit claims less than $10,000 in amount. We see no purpose in granting this motion. Whether plaintiffs' claims are outside our jurisdiction altogether because of 42 U.S.C. § 1395*oo* (a) or are now simply barred from assertion here because of the statute of limitations would, in either case, bring us to the same result: an absence of judicial power for lack of sovereign consent to suit.