**THERMAL ELECTRONIC, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 91–1494 C.**

United States Claims Court.

April 16, 1992.

John P. Coale, with whom was Greta C. Van Susteren, Washington, D.C., for plaintiff.

Franklin E. White, Jr., with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen and Thomas W. Petersen, Washington, D.C., for defendant.

1. Defendant filed a motion for summary judgment on December 11, 1991. Plaintiff filed a cross-motion for summary judgment on January 8, 1992.

2. MIS–40414 is a specification entitled "Missile Command/Department of the Army/Critical Item Product Function Specification/For Power

## OPINION AND ORDER

TURNER, Judge.

Plaintiff, Thermal Electronic, Inc., entered a contract with the United States Naval Weapons Center to supply airborne telemetry power supply units. Plaintiff brought this action seeking amounts incurred in performing a testing procedure which it asserts was not required by the contract. The matter stands on cross-motions for summary judgment.[1] Oral argument was conducted on April 16, 1992. We conclude that summary judgment should be granted in favor of defendant.

### I

On September 11, 1989, the parties entered the contract in which plaintiff agreed to provide the power supply units in accordance with MIS–40414.[2] MIS–40414 requires a variety of testing procedures to be performed on the units. One of these tests is a "burn-in and screening." A dispute arose regarding whether all—or only a sample—of the units were subject to this test. Defendant refused to accept the units unless plaintiff performed this test on all of the units. Although plaintiff did burn-in and screen each of the units, it claimed that it was not contractually obligated to burn-in and screen each unit.

On October 4, 1991, plaintiff filed this action seeking payment for the costs it incurred which were allegedly not required by the contract. The parties filed cross-motions for summary judgment pursuant to RUSCC 56.

### II

The sole issue is the correct interpretation of MIS–40414 which was adopted as part of the contract-in-suit. Interpretation of the clear and unambiguous language of a contract is a question of law that may be resolved by summary judg-

Supply, Airborne/For use in AN/DKT–68" which establishes the "performance, design, test, manufacture, and acceptance requirements" for airborne telemetry power supply units. MIS–40414 ¶ 1.1. Each of the provisions discussed in this opinion is in these specifications.

ment. *See Beta Systems, Inc. v. United States,* 838 F.2d 1179, 1183 (Fed.Cir.1988). Generally, the plain language of a contract controls, and only language which is reasonably susceptible to more than one meaning may be considered ambiguous. *See Neal & Co. v. United States,* 19 Cl.Ct. 463, 471 & n. 4 (1990), *aff'd,* 945 F.2d 385 (Fed. Cir.1991); *John C. Grimberg Co. v. United States,* 7 Cl.Ct. 452, 457, *aff'd,* 785 F.2d 325 (Fed.Cir.1985). The mere fact that the parties are asserting different interpretations is not sufficient to constitute an ambiguity. *See Perry & Wallis, Inc. v. United States,* 192 Ct.Cl. 310, 315, 427 F.2d 722, 725 (1970) (quoting *Bishop Eng'g Co. v. United States,* 180 Ct.Cl. 411, 416 (1967)); *Neal & Co.,* 19 Cl.Ct. at 471.

■ Defendant argues that MIS–40414 unambiguously provided that all of the units were subject to the burn-in and screening requirement. In support of its argument, defendant points to paragraph 3.2.3.2 which provides: *"All* power supplies shall be subjected to a minimum of six cycles of burn-in and screening in accordance with Figures 1 and 2. The last two cycles shall be failure free (see 4.6.3.2) [emphasis added]." Paragraph 4.6.3.2, entitled "Burn-in and screening," provides: "To determine conformance to 3.2.3.2, subject each power supply to six cycles minimum of burn-in and screening as shown in Figures 1 and 2, and as specified below...." Both provisions are straight-forward in requiring that all units be burned-in and screened.

Nonetheless, plaintiff submits that it was required to do the burn-in and screening only on an "inspection lot." [3] In support of its argument, plaintiff cites paragraph 4.5.2 and footnote 1 to Table 2 which contain identical language stating that "[p]rior to quality conformance inspections, each power supply of the inspection lot shall have successfully completed burn-in and screening in accordance with 4.6.3.2." Plaintiff argues that this language means that only

units in the inspection lot must be subjected to the burn-in and screening procedure.

■ We conclude that plaintiff's interpretation of this language is not reasonable. The provisions state that the burn-in and screening test should precede the quality conformance test. They simply set out the sequential ordering for the different types of tests. Moreover, the paragraphs 4.6.3.2 and 3.2.3.2 label the burn-in and screening procedure as a reliability test (not a quality conformance test). This is further support for the fact that all of the units are required to be subjected to the procedure. Furthermore, to interpret this provision as plaintiff proposes would render paragraph 3.2.3.2 meaningless. " '[A]n interpretation which gives a reasonable meaning to all [parts of a contract] will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result.' " *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991) (quoting *Arizona v. United States,* 216 Ct.Cl. 221, 235–36, 575 F.2d 855, 863 (1978)).

Therefore, we conclude that MIS–40414 clearly provided that all power supply units be subjected to the burn-in and screening procedure. Accordingly, plaintiff is not entitled to recover the costs it incurred in performing this procedure.

### III

Based on the foregoing, defendant's motion for summary judgment is GRANTED, and plaintiff's cross-motion for summary judgment is DENIED. Accordingly, judgment shall be entered in favor of defendant.

Pursuant to RUSCC 54(d), costs shall be allowed to the defendant ("the prevailing party").

---

**3.** The parties also disagree about the size of the "inspection lot." Plaintiff asserts that it contains only two units; defendant contends that the total quantity of the contract comprises the "inspection lot." Because the decision in this case does not depend on the number of units in any "inspection lot," we need not decide this issue.