**BLOOMINGTON HOSPITAL, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 92–395C.**

United States Court of Federal Claims.

Sept. 23, 1993.

William S. Hall, Indianapolis, IN, attorney of record, for plaintiffs. N. Kent Smith, William H. Thompson, and Hall, Render, Killian, Heath & Lyman, of counsel.

John Caterini, Washington, DC, with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. David M. Cohen, Director, Jeanne E. Davidson, Asst. Director, and Henry Goldberg, Dept. of Health and Human Services, of counsel.

## OPINION

FUTEY, Judge.

This case is before the court on defendant's motion to dismiss, or in the alternative, for summary judgment, and plaintiffs' cross-motion for summary judgment, or in the alternative, to obtain declaratory judgment on the June 1, 1987, settlement agreement.[1]

### Factual Background

Plaintiffs, 29 Indiana hospitals, seek $1,142,334.00 in Medicare reimbursements plus interest and costs, claiming that they are rightful parties to a settlement reached between the American Hospital Association (AHA) (negotiating on the behalf of hospitals nationwide) and the Secretary of Health & Human Services (Secretary). The settlement, reached on June 5, 1987, resolved a 10–year old [2] dispute between the hospitals and the Secretary concerning the rate at which hospitals were reimbursed for the services they rendered to Medicare beneficiaries.

### A. Medicare Program Background

■ The Social Security Act, 42 U.S.C. §§ 301–1397e (1988), establishes a Medicare program [3] insuring health care services for the elderly and disabled. Under this program, health care providers who enter into an agreement with the Secretary are reimbursed for services rendered to Medicare beneficiaries. 42 U.S.C. § 1395cc (1988).

To receive reimbursement, a provider annually submits a "cost report" to a Fiscal Intermediary, usually a local insurance company.[4] 42 U.S.C. § 1395f(a) (1988); 42 C.F.R. §§ 413.20(a), (b), 413.24(f) (1992). The Fiscal Intermediary reviews the cost report and issues a "Notice of Program Reimbursement" (NPR) which either grants, denies, or adjusts the reimbursements the provider seeks. 42 C.F.R. § 405.1803 (1992). Providers may appeal decisions of the Fiscal Intermediary to the Provider Reimbursement Review Board (PRRB) within 180 days of the Fiscal Intermediary's issuance of the NPR. 42 U.S.C. § 1395oo (a)(3) (1988); 42 C.F.R. § 405.1841 (1992). However, the PRRB is allowed to waive the 180 day filing requirement for "good cause shown." 42 C.F.R. § 405.-1841(b) (1992). In addition, the Secretary reserves the right to review, *sua sponte,* any PRRB decision.[5] 42 U.S.C. § 1395oo (f)(1) (1988).

After the PRRB makes its determination, providers may obtain judicial review of the PRRB decision in the district court where the provider is located or in the United States District Court for the District of

---

1. The American Hospital Association's (AHA) June 1, 1987, offer was endorsed by Terry Coleman, Principal Deputy General Counsel of the Department of Health and Human Services (DHHS) on June 5, 1987. Plaintiffs' Appendix (Pl.App.) at 24.

2. The dispute began with the Secretary of Health and Human Services' (Secretary) adoption and implementation of controversial new provider reimbursement guidelines (Provider Reimbursement Manual Part I & 2345) on January 1, 1977. The dispute was finally settled by an agreement reached between the Secretary and AHA on June 5, 1987.

3. Medicare consists of two major parts. Part A, 42 U.S.C. §§ 1395c–1395i–1 (1988), provides insurance for hospital and related post-hospital services. Part B, 42 U.S.C. §§ 1395j–1395w (1988), provides insurance for supplemental medical services apart from hospitalization, such as those rendered by physicians. *Alabama*

*Hosp. Ass'n v. United States,* 656 F.2d 606, 228 Ct.Cl. 176, 178 (1981), *cert. denied,* 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982). This case arises under Part A.

4. Fiscal Intermediaries are nominated by a provider or group of providers. Besides entering into contracts with the Secretary, other responsibilities undertaken by Fiscal Intermediaries include, serving as the Secretary's agent for functions such as hospital audits, information dissemination, and fund disbursement. *Alabama Hosp. Ass'n,* 656 F.2d 606, 228 Ct.Cl. at 178–79.

 The fiscal intermediary in this case is Mutual Hospital Insurance, Inc., Blue Cross & Blue Shield of Indiana.

5. In this case, the Secretary, through the Administrator of the Health Care Finance Administration (HCFA) reviewed the Provider Reimbursement Review Board (PRRB) decision handed down to plaintiffs.

Columbia.[6] *Id.*

## B. *Background of Medicare Reimbursement Policy*

Providers under the Medicare program are reimbursed in part based upon the calculation of average per diem costs of services provided to eligible beneficiaries, rather than upon determining the exact costs per patient per hospital stay. In calculating the amount of a reimbursement it was required to pay to a provider hospital, the Secretary divided reimbursable services into three categories: (1) general routine patient care areas, (2) special care units, and (3) ancillary service areas. 42 C.F.R. § 405.452(d) (1977). For general routine patient care areas and special care units the reimbursable services were simply calculated by multiplying the average per diem cost by the total number of Medicare inpatient days. However, ancillary services (which included maternity labor and delivery room care) were allocated on the basis of the ratio for charges to Medicare recipients to charges to all other patients who had received health care. *Id.*

In 1977, a dispute arose between hospitals nationwide and the Secretary over the Secretary's method of calculating Medicare reimbursements due to provider hospitals. The dispute centered on the Secretary's practice of including patients in the maternity labor/delivery area of hospitals as users of "routine services" in the computation of the average per diem cost of routine patient health care. By including labor/delivery room patients as "routine services" patients, the Secretary was not factoring in the more expensive services that hospitals provide to maternity patients when calculating the average per diem cost of patient care.[7] In response to the Secretary's reimbursement policy numerous disputes arose, culminating in the settlement agreement reached between the AHA and the Secretary on June 5, 1987.

## C. *Background*

Plaintiffs initially followed the proper steps for seeking Medicare reimbursements by submitting cost reports to their Fiscal Intermediary, Mutual Hospital Insurance, Inc., Blue Cross & Blue Shield of Indiana. The Fiscal Intermediary, however, reduced the amount of reimbursements the plaintiffs sought because of the Secretary's policy of including labor/delivery room patients as users of "routine services." Plaintiffs failed to file an appeal with the PRRB within 180 days of the issuance of the Fiscal Intermediary's NPR.

In the meantime, negotiations between the AHA and the Secretary were being conducted to find a suitable settlement to the labor/delivery room reimbursement dispute. On February 19, 1987, the Secretary made a settlement offer to the AHA. However, by letter of March 23, 1987, the Secretary revoked the settlement offer. Later, on June 1, 1987, in a letter written by AHA lawyers to the Secretary, the AHA proposed a settlement offer virtually identical to the settlement offer the Secretary had earlier revoked. The Secretary agreed to the settlement terms on June 5, 1987.

The settlement offer was formally tendered to any hospitals "that have such appeals properly pending at the administrative level or before the Courts."[8] All hos-

---

**6.** Under 42 U.S.C. § 1395*oo* (f)(1) (1988), "[s]uch action *shall* be brought in the district court of the United States for the judicial district in which the provider is located ... or in the District Court for the District of Columbia." [Emphasis added.]

**7.** Plaintiffs explain the crux of the dispute as follows:

> The Secretary's policy distorted the average per diem cost of providing services to Medicare beneficiaries by requiring the hospitals to count a woman in the labor/delivery room area as being in a routine care bed at the census-taking hour (midnight), but refusing to permit the hospitals to add the cost of care in the labor/delivery room to the costs of routine care. Since very few Medicare beneficiaries deliver babies, this severely distorted the average per diem cost of providing inpatient care to Medicare beneficiaries and thereby violated the basic provisions of the Medicare statute by shifting costs from Medicare patients to non-Medicare patients.

**8.** Pl.App. at 2.

pitals wishing to participate in the settlement offer were required to notify their respective Fiscal Intermediaries in writing by July 15, 1987.

Plaintiffs notified the Indiana Fiscal Intermediary by letter on July 8, 1987, stating that they intended to accept the terms of the settlement offer. The Fiscal Intermediary acknowledged receipt of plaintiffs' letter the following day, July 9, 1987. At that time however, plaintiffs did not have any appeals pending at any administrative level or before any court.

On August 20, 1987, two months after the settlement offer was finalized, plaintiffs, having failed to adhere to the 180 day requirement for filing appeals with the PRRB, finally appealed to the PRRB seeking an extension of the 180 day time limit. By its decision on March 2, 1988, the PRRB rejected plaintiffs' appeal because the PRRB determined that it lacked jurisdiction based on plaintiffs' failure to comply with the 180 day requirement for filing appeals. Furthermore, the PRRB determined that plaintiffs had not shown the required "good cause" for an extension to be granted.

Eight days later, on March 10, 1988, plaintiffs appealed to the Secretary's representative, the Administrator of the Health Care Financing Administration (HCFA). By its decision on May 5, 1988, the HCFA affirmed the PRRB's earlier decision rejecting plaintiffs' appeal for failure to comply with the 180 day filing requirement.

Plaintiffs sought judicial review of the HCFA decision, pursuant to 42 U.S.C. § 1395oo (f)(1) (1988), by filing a complaint in the United States District Court for the Southern District of Indiana. *Howard Community Hosp. v. Sullivan*, No. IP88–525–C, 1991 WL 263545 (S.D.Ind. May 6, 1988). The district court, however, dismissed the case with prejudice on September 27, 1991, for lack of jurisdiction because plaintiffs had failed to adhere to the 180 day filing requirement.

Plaintiffs subsequently filed suit in the United States Claims Court[9] on June 10, 1992, seeking $1,142,334.00 in Medicare reimbursements, plus interest and costs. Plaintiffs seek to enforce the terms of the June 5, 1987, settlement agreement claiming they are proper parties to a legitimate contract which has subsequently been breached by the Secretary's refusal to compensate them as outlined in the settlement agreement.

Defendant has filed a motion to dismiss, under RCFC 12(b)(1), claiming that this court lacks jurisdiction over Medicare reimbursement appeals, and also under RCFC 12(b)(4) maintaining that plaintiffs have failed to state a claim upon which relief may be granted. Alternatively, defendant argues that the doctrine of *res judicata* bars plaintiffs' complaint, and that the government, therefore, is entitled to summary judgment. In response, plaintiffs have filed a cross-motion for summary judgment or, in the alternative, to obtain a declaratory judgment on the June 1, 1987, settlement agreement.

*Discussion*

### I. *Jurisdiction*

 In ruling on a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Hamlet v. United States*, 873 F.2d 1414, 1415 (Fed. Cir.1989); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir. 1988). If the undisputed facts reveal any possible basis on which the non-moving party might prevail, the court must deny the motion. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686; *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988). If the motion challenges the truth of the jurisdictional facts alleged in the complaint however, the court

**9.** Pursuant to the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516 (1992), the United States Claims Court was renamed the United States Court of Federal Claims, effective October 29, 1992.

may consider relevant evidence in order to resolve the factual dispute. *Rocovich v. United States*, 933 F.2d 991, 994 (Fed.Cir. 1991). Plaintiff bears the burden of establishing subject matter jurisdiction. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936); *Rocovich*, 933 F.2d at 993.

■ Under the Tucker Act, this court has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. 1491(a)(1) (1988). Hence, absent congressional consent to entertain a claim against the United States, this court lacks authority to grant relief. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).

■ The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *Testan*, 424 U.S. at 398, 96 S.Ct. at 953. In addition to showing that this court can exercise jurisdiction pursuant to the Tucker Act, plaintiffs must also cite a provision of law which can be construed fairly as mandating compensation. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 1352, 63 L.Ed.2d 607 (1980).

■ In the present case, plaintiffs and defendant disagree on how the issue of jurisdiction should be framed. Plaintiffs argue that they are seeking to enforce the terms of a legitimate contract to which they are rightful parties.

Defendant, on the other hand, argues that plaintiffs are merely appealing Medicare reimbursement determinations made by the Secretary, the PRRB, and the district court. Therefore, as defendant argues, because 42 U.S.C. § 1395*oo* (f)(1) provides that the exclusive remedy for Medicare reimbursement appeals is in the district courts, this court cannot exercise jurisdiction over plaintiffs' complaint.

Defendant asserts that whenever an explicit statutory provision exists directing litigation to be heard exclusively in a particular forum this court's Tucker Act jurisdiction is effectively pre-empted. Defendant points to the language of § 1395*oo* (f)(1) in asserting that the district courts are the exclusive forum for Medicare reimbursement disputes:

> Providers shall have the right to obtain judicial review of any final decision of the [PRRB].... Such action shall be brought in the district court of the United States for the judicial district in which the provider is located (or, in an action brought jointly by several providers, the judicial district in which the greatest number of such providers are located) or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of Title 5 notwithstanding any other provisions in section 405 of this title.

On numerous occasions, the Supreme Court has held that a remedy furnished by an explicit, detailed statute pre-empts a more general remedy. *Brown v. General Serv. Admin.*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (Title VII of the Civil Rights Act of 1964 pre-empts pre-existing employment discrimination remedies); *United States v. Demko*, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966) (Workers compensation system of prison inmates pre-empts the Federal Tort Claims Act); *Matson Navigation Co. v. United States*, 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336 (1932) (Merchant Marine Act pre-empts Court of Claims' Tucker Act jurisdiction over maritime causes of action arising out of the operation of merchant vessels). Thus, as the court noted in *Puget Sound Power & Light Co. v. United States*, 23 Cl.Ct. 46, 59 (1991), *appeal dismissed*, 944 F.2d 912 (Fed.Cir.1991), *cert. denied*, ─── U.S. ───, 112 S.Ct. 1160, 117 L.Ed.2d 408 (1992), "it is well established that this Court will lack jurisdiction to enter [a] claim if Congress has expressly placed jurisdiction over the claim elsewhere." *Id.* at 58-9. [Citations omitted.]

Moreover, in *Fiorentino v. United States*, 607 F.2d 963, 221 Ct.Cl. 545, 555

(1979), *cert. denied,* 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980), the court stated—

> The instances of partial repeal of the Tucker Act by laws expressly directing litigation of some class or kind elsewhere are common. A recent example is 42 U.S.C. § 1395*oo* (f) which repeals by implication whatever consent previously existed to Tucker Act suits by Social Security Act health care providers for expense reimbursement.

Furthermore, in *John Muir Mem. Hosp. v. United States,* 221 Ct.Cl. 843, 846, 1979 WL 10395 (1979), the court stated:

> Where Congress wishes to preserve jurisdiction in the Court of Claims when later consenting to suits elsewhere, it is careful to say that Court of Claims jurisdiction survives, as in 28 U.S.C. § 1346(a) (tax refund claims). Under these canons, nobody seriously contends that 42 U.S.C. § 1395*oo*(f) does not in general cancel whatever consent was previously given to suits by providers here, except claims under $10,000 and claims as to fiscal years ended before June 30, 1973.[10]

The courts have recognized that settlement or compromise agreements are contractual in nature. *Chevron Chem. Corp. v. United States,* 5 Cl.Ct. 807, 810 (1984) (*citing Cheyenne–Arapaho Indian Tribes of Okla. v. United States,* 671 F.2d 1305, 229 Ct.Cl. 434, 439 (1982); *Blackhawk Heating & Plumbing Co., Inc. v. United States,* 622 F.2d 539, 224 Ct.Cl. 111, 135 (1980)). Although plaintiffs describe their claim as a "contract dispute," the subject matter of the purported underlying contract is wholly based on a Medicare reimbursement dispute. Therefore, notwithstanding this court's ability to exercise jurisdiction when a settlement agreement or contract with the federal government is at issue, it is clear that plaintiffs are merely seeking a redetermination of a continuing Medicare reimbursement dispute. Thus, this court is without jurisdiction because Congress has explicitly provided that Medicare reimbursement disputes are to be heard solely in the district courts. 42 U.S.C. § 1395*oo* (f)(1).

■ The court acknowledges that dismissal of plaintiffs' complaint will most likely leave them without a forum to present their claim. This fact, however, cannot influence the court's determination. In *Mount Sinai Med. Ctr. v. United States,* 23 Cl.Ct. 691, 697 (1991), the court found it imperative to exercise jurisdiction where the party seeking relief would otherwise be left with "no other viable means of judicial review." In invalidating *Mount Sinai's* reasoning, the Court of Appeals for the Federal Circuit noted that the plaintiffs were left no other remedy by virtue of the dismissal "only because statutorily prescribed remedies have gone unused." *Appalachian Reg. Healthcare, Inc. v. United States,* 999 F.2d 1573, 1578 (Fed.Cir.1993), *rev'g,* No. 205–88C (Cl.Ct. Aug. 9, 1991).[11]

■ In the instant case, plaintiffs failed to make timely appeals to the PRRB. They only instituted proceedings seeking a hearing after the 180 day time limit had passed, and only after AHA had successfully negotiated a settlement for those hospitals that had appeals "properly pending." Therefore, as the Federal Circuit stated, a plaintiff's "failure to raise its claim in accordance with statutory provisions for review does not create new Tucker Act jurisdiction over that claim." *Id.*[12]

---

**10.** *John Muir Mem. Hosp. v. United States,* 221 Ct.Cl. 843, 1979 WL 10395 (1979), was determined subsequent to *Whitecliff, Inc. v. United States,* 536 F.2d 347, 210 Ct.Cl. 53 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977), where the court determined that it retained jurisdiction over Medicare disputes arising prior to June 30, 1973, but disputes arising after that date could only be heard in the district courts.

**11.** The decision that the Court of Appeals for the Federal Circuit actually reversed was *Appala-*

*chian Regional Healthcare, Inc. v. United States,* No. 205–88C (Cl.Ct. Aug. 9, 1991). The Claims Court issued an order without an opinion dismissing the case in *Appalachian* holding that *Mount Sinai Med. Ctr. v. United States,* 23 Cl.Ct. 691 (1991), was indistinguishable and, therefore, controlling.

**12.** *Del Puerto Hosp. v. United States,* 25 Cl.Ct. 243, 246 (1992), also stands for the same proposition. The court, in dismissing a similar Medicare reimbursement claim for lack of jurisdiction, stated, "[t]o now contend, as plaintiffs do

## II. *Failure to State a Claim*

Assuming, *arguendo*, that this court has jurisdiction, plaintiffs' complaint must be dismissed, pursuant to RCFC 12(b)(4), for failure to state a claim upon which relief may be granted. A motion to dismiss for failure to state a claim should be granted only where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Mostowy v. United States,* 966 F.2d 668, 672 (Fed.Cir.1992). In ruling on a motion to dismiss for failure to state a claim, the court must accept as true the complaint's undisputed factual allegations, and should construe them in a light most favorable to the plaintiff. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986) (*citing Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)); *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991). Furthermore, all that is required to withstand a motion to dismiss is " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gould,* 935 F.2d at 1276 (*citing Conley,* 355 U.S. at 47, 78 S.Ct. at 103). [Footnote omitted.]

In the instant case, defendant asserts that plaintiffs cannot enjoy the fruits of the settlement agreement because they do not qualify as proper parties to it. The settlement agreement itself identifies those health care providers that are parties to the agreement and entitled to money reimbursements from the Secretary:

### II. *PARTIES*

While the precise dollar amount to be paid each hospital pursuant to this settlement offer will depend on the posture of each hospital's labor/delivery room appeal for a particular year, the offer will be open to those hospitals that have such appeals properly pending at the administrative level or before the Courts, and on the [sic] as submitted cost report: (1) excluded labor/delivery room days from the count of inpatient routine days; (2) included labor room days as inpatient routine days but also included labor/delivery cost center costs as routine costs; (3) claimed that the labor/delivery area was a special care or intensive type care unit, or (4) otherwise clearly made a claim relating to labor room days on a document that accompanied the [sic] as submitted cost report.

The offer shall also be open to hospitals which claimed labor room days as set forth above, have not yet appealed the issue to the PRRB, but either have not yet received an NPR or received an NPR less than 180 days prior to May 31, 1987.

The offer will also not be open to any hospital which receives an adverse judgment on the merits of the labor delivery room issue.[13]

Therefore, it is clear that in order to be a legitimate party to the settlement agreement, first, a hospital must have "appeals properly pending at the administrative level or before the courts," and secondly, a hospital must have accounted for its labor/delivery room costs in one of the four methods listed above when the hospitals submitted their annual cost reports to their Fiscal Intermediaries. It is undisputed that plaintiffs used one of the sanctioned methods of accounting listed above on their cost reports.[14] The term "properly pending at the administrative

---

here, that this court can serve as a forum of last resort to hear claims for monetary relief that might otherwise go unaddressed 'is to do violence to the whole doctrine of strict construction of the consent to be sued.' " *Id.* (*quoting John Muir Mem. Hosp.,* 221 Ct.Cl. at 846).

**13.** Pl.App. at 2–3.

**14.** Counsel for plaintiffs, however, acknowledged at oral argument that one plaintiff, Cameron Memorial Community Hospital, failed to use one of the contractually sanctioned accounting methods. Consequently, plaintiffs concede that Cameron Memorial Community Hospital is not a party to the settlement agreement and, therefore, Cameron's claim should be dismissed.

level or before the courts", nonetheless, is disputed.[15]

Defendant reads the language of the agreement literally and asserts that plaintiffs had no appeals "properly pending" at any administrative level or before the courts and, therefore, cannot be parties to the settlement agreement. Consequently, defendant argues, plaintiffs cannot sue upon a contract or settlement agreement to which they were not parties.

Plaintiff argues that the term "properly pending" is ambiguous, claiming that the original settlement offer, drafted, and later revoked by the Secretary, used the term "properly pending" together with the phrase "properly made claim" and was incorporated without definition into the final settlement agreement. Plaintiffs allege that "reasonable men [can] interpret the provision in different ways."[16] Therefore, plaintiffs argue, under the doctrine of *contra proferentum*, the ambiguity should be interpreted in favor of the non-drafting party. Plaintiffs assert that they are the non-drafting party.

■ It is well-established that "where the provisions of a contract are phrased in clear and unambiguous language, 'the words of those provisions must be given their plain and ordinary meaning by the court in defining the rights and obligations of the parties....'" *Boehm v. United States*, 22 Cl.Ct. 511, 516 (1991) (*quoting Elden v. United States*, 617 F.2d 254, 223 Ct.Cl. 239 (1980)). Therefore, "[i]f the court finds that only one reasonable interpretation of the contract provision exists, the court's inquiry ends and the single reasonable interpretation will apply." *Seaboard Lumber Co. v. United States*, 19 Cl.Ct. 310, 314 (1989). Moreover, just because parties differ as to the meaning of a contract does not make its terms ambiguous. *Thermal Electronic, Inc. v. United States*, 25 Cl.Ct. 671, 673 (1992); *Dynamics Corp. v. United States*, 17 Cl.Ct. 60, 63 (1989); *Cherry Hill Sand & Gravel Co. v. United States*, 8 Cl.Ct. 757, 764 (1985).

■ The contract at issue is not ambiguous, when interpreted "by a reasonably intelligent person acquainted with the contemporaneous circumstances." *Seaboard Lumber Co.*, 19 Cl.Ct. at 314. The settlement agreement clearly indicates that those hospitals that can qualify as parties to the settlement agreement must fulfill two prerequisites. First, the contract explicitly states that only those hospitals with "appeals properly pending at the administrative level or before the courts" are able to partake in the settlement agreement. The second requirement is that the hospitals must have used one of the four methods of accounting labor/delivery room days described in the settlement agreement when they submitted cost reports to the Fiscal Intermediary.

■ Plaintiffs insist that the language of the prior settlement offer drafted, and later revoked by the Secretary, is incorporated in the present settlement agreement. Thus, plaintiffs argue that the language describing "properly made claims" in the original offer makes the

---

**15.** Plaintiffs contended, during oral argument, that because they had cost reports pending before their Fiscal Intermediary on June 5, 1987, that they are eligible parties to the settlement agreement. Plaintiffs' claim, nonetheless, is without merit. The settlement agreement explicitly provides that hospitals are only eligible if they have "appeals" pending at the administrative level. While the Fiscal Intermediary may be a part of the "administrative level," a cost report is clearly not an "appeal." Therefore, plaintiffs are outside the ambit of the settlement agreement's specific requirements for eligibility.

**16.** In the original settlement offer made by the Secretary on February 19, 1987 and later revoked by the Secretary on March 23, 1987, that portion of the offer that is said to be ambiguous by plaintiffs reads: "1. Payment of Properly Made Claims—We agree to make full payment of the amounts disallowed as a consequence of including labor/delivery room days in the routine cost calculation in all cases properly pending at the administrative level or before the courts. (A properly made claim is one in which a labor/delivery room claim for reimbursement is disclosed on the cost report, or in a document accompanying the cost report—this does not include, among other things, so-called 'self-disallowed' claims, for which no relief is to be afforded.)" Pl.App. at 19.

ultimate language of the settlement agreement ("properly pending") ambiguous. However, it is clear by looking at the plain language of both the original settlement offer and the final settlement agreement, that they are in accordance. Both documents explicitly state that parties to the agreement must have appeals or cases "properly pending at the ·administrative level or before the courts." [17] Because plaintiffs had neither appeals nor cases pending before any administrative board or before any court they cannot be parties to the settlement agreement. Plaintiffs did not institute any appeals before the PRRB until 2 months after the settlement agreement had been reached, and a month after they had purported to accept the settlement offer. Because plaintiffs did not have any cases or appeals "pending," it obviously follows that they could not have any cases or appeals "properly pending." [18] Therefore, by interpreting the plain language of the agreement, it is clear that plaintiffs do not meet the requirements for participation in the settlement agreement and cannot be parties to it.[19] Consequently, even if the court found that a contract dispute is at issue, and exercised jurisdiction based upon that finding, plaintiffs are not parties to the settlement agreement

and, therefore, have failed to state a claim upon which relief may be granted.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of jurisdiction is granted. The Clerk is directed to dismiss plaintiffs' complaint. No costs.

---

**17.** That portion of the original offer describing "properly made claims" merely discusses the second requirement for those hospitals wishing to participate in the settlement agreement. Like the four types of acceptable accounting procedures listed in the final settlement agreement, it merely outlines which kinds of accounting procedures of labor/delivery room days will be acceptable for reimbursement. *See* Pl.App. at 19.

**18.** The district court in plaintiffs' earlier case, *Howard Community Hosp. v. Sullivan*, No. IP88–525–C, 1991 WL 263545, slip op. (S.D.Ind. Sept. 27, 1991), stated "although the term 'properly pending' is not defined in the settlement agreement, the plaintiffs' suggestion that it was ambiguous and did not bar them from participating in the agreement is without merit." *Howard Community Hospital*, slip op. at 7 n. 3.

*Howard Community Hospital* should not be given preclusive effect under the doctrine of *res judicata*. However, in a case similar to the present one, after refusing to give an earlier district court decision *res judicata* effect, the

court stated, "the [prior] decision deals not only with the identical claims at issue here, but with the same contentions, to a large extent, and *it must be and is highly persuasive." John Muir Mem. Hosp.*, 221 Ct.Cl. at 845. [Emphasis added.] Thus, because *Howard Community Hospital* and this case are on all fours, the earlier district court decision must be, and is, highly persuasive.

**19.** Even assuming that the contract was ambiguous, under the doctrine of *contra proferentum,* contract ambiguities should be read in favor of the non-drafting party. *Newsom v. United States,* 676 F.2d 647, 230 Ct.Cl. 301, 303 (1982); *Thanet Corp. v. United States,* 591 F.2d 629, 219 Ct.Cl. 75, 82 (1979); *Kenneth Reed Constr. Corp. v. United States,* 475 F.2d 583, 201 Ct.Cl. 282, 289 (1973). Both parties, however, claim that they are the non-drafting party. Notwithstanding, plaintiffs claim that the AHA's offer of June 1, 1987, was virtually identical to the Secretary's February 1987 offer, the AHA's offer was, nevertheless, a counter-offer. Therefore, defendant is the non-drafting party.