# United States Court of Appeals for the Federal Circuit

---

ALVARADO HOSPITAL, LLC, A DELAWARE
LIMITED LIABILITY COMPANY, DBA ALVARADO
HOSPITAL MEDICAL CENTER, VERITAS HEALTH
SERVICE, INC., A CALIFORNIA CORPORATION,
DBA CHINO VALLEY MEDICAL CENTER, DESERT
VALLEY HOSPITAL, INC., A CALIFORNIA
CORPORATION, DBA DESERT VALLEY
HOSPITAL, PRIME HEALTHCARE CENTINELA,
LLC, A DELAWARE LIMITED LIABILITY
COMPANY, DBA CENTINELA HOSPITAL
MEDICAL CENTER, PRIME HEALTHCARE -
ENCINO HOSPITAL, LLC, A DELAWARE LIMITED
LIABILITY COMPANY, DBA ENCINO HOSPITAL
MEDICAL CENTER, PRIME HEALTHCARE
SERVICES - GARDEN GROVE, LLC, A DELAWARE
LIMITED LIABILITY COMPANY, DBA GARDEN
GROVE HOSPITAL MEDICAL CENTER, PRIME
HEALTHCARE HUNTINGTON BEACH, LLC, A
DELAWARE LIMITED LIABILITY COMPANY, DBA
HUNTINGTON BEACH HOSPITAL, PRIME
HEALTHCARE LA PALMA, LLC, A DELAWARE
LIMITED LIABILITY COMPANY, DBA LA PALMA
INTERCOMMUNITY HOSPITAL, PRIME
HEALTHCARE SERVICES - LOW BUCK LLC, A
DELAWARE LIMITED LIABILITY COMPANY, DBA
LOWER BUCKS HOSPITAL, PRIME HEALTHCARE
SERVICES - MONTCLAIR, LLC, A DELAWARE
LIMITED LIABILITY COMPANY, DBA
MONTCLAIR HOSPITAL MEDICAL CENTER,
PRIME HEALTHCARE PARADISE VALLEY, LLC, A
DELAWARE LIMITED LIABILITY COMPANY, DBA
PARADISE VALLEY HOSPITAL, PRIME

**HEALTHCARE SERVICES - ROXBOROUGH, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DBA ROXBOROUGH MEMORIAL HOSPITAL, PRIME HEALTHCARE SERVICES - SAN DIMAS, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DBA SAN DIMAS COMMUNITY HOSPITAL, PRIME HEALTHCARE SERVICES - SHASTA, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DBA SHASTA REGIONAL MEDICAL CENTER, PRIME HEALTHCARE SERVICES - SHERMAN OAKS, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DBA SHERMAN OAKS HOSPITAL, PRIME HEALTHCARE ANAHEIM, LLC, A DELAWARE LIMITED LIABILITY COMPANY, DBA WEST ANAHEIM MEDICAL CENTER,**
*Plaintiffs-Appellants*

**v.**

**NORRIS COCHRAN, ACTING SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Defendant-Appellee*

————————————

2016-1356

————————————

Appeal from the United States District Court for the Central District of California in No. 2:15-cv-06312-R-PLA, Judge Manuel L. Real.

————————————

Decided: August 22, 2017

————————————

MARK STEVEN HARDIMAN, Nelson Hardiman LLP, Los Angeles, CA, argued for plaintiffs-appellants. Also represented by JOHN ALFRED MILLS, JONATHAN WINSOR RADKE.

BENJAMIN M. SHULTZ, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by MICHAEL S. RAAB, BENJAMIN C. MIZER; SEAN SIEKKINEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; EILEEN M. DECKER, Office of the United States Attorney for the Central District of California, United States Department of Justice, Los Angeles, CA.

---

Before PROST, *Chief Judge,* NEWMAN and LOURIE, *Circuit Judges.*

Opinion for the court filed by *Chief Judge* PROST.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

PROST, *Chief Judge.*

Plaintiffs-Appellants Prime Hospitals[1] appeal from the order of the United States District Court for the Central District of California transferring their complaint under 28 U.S.C. § 1631 to the United States Court of

---

[1] Alvarado Hospital, LLC; Veritas Health Services, Inc.; Prime Healthcare Centinela, LLC; Desert Valley Hospital, Inc.; Prime Healthcare Services – Encino, LLC; Prime Healthcare Huntington Beach, LLC; Prime Healthcare – La Palma, LLC; Prime Healthcare Services – Garden Grove, LLC; Prime Healthcare Services – Lower Bucks, LLC; Prime Healthcare Services – Montclair, LLC; Prime Healthcare Paradise Valley, LLC; Prime Healthcare Services – Roxborough, LLC; Prime Healthcare Services – San Dimas, LLC; Prime Healthcare Services – Shasta, LLC; Prime Healthcare Services – Sherman Oaks, LLC; and Prime Healthcare Anaheim, LLC (collectively, the "Prime Hospitals").

Federal Claims. Prime Hospitals are seeking monetary relief for a breach of an alleged settlement agreement and, in the alternative, declaratory, injunctive, and mandamus relief from an alleged secret and illegal policy to prevent and delay Prime Hospitals from exhausting their administrative remedies.

Because Prime Hospitals' breach of contract claim is fundamentally a suit to enforce a contract and it does not arise under the Medicare Act, we hold that the Court of Federal Claims has exclusive jurisdiction over that claim under the Tucker Act, 28 U.S.C. § 1491. We also hold that the Court of Federal Claims does not have jurisdiction, however, over Prime Hospitals' alternative claims seeking declaratory, injunctive, and mandamus relief. Accordingly, we affirm the district court's transfer order in-part, reverse-in-part, and remand for further proceedings.

BACKGROUND

I

The Medicare program, which provides health insurance for the elderly and disabled, is administered by the United States Department of Health & Humans Services ("HHS") through its agency, the Center for Medicare & Medicaid Services ("CMS"). 42 U.S.C. §§ 1395 *et seq.* Medicare Part A covers hospital inpatient services and Medicare Part B covers outpatient services, including emergency room services for patients who do not require a hospital admission. *See id.* § 1395d, k. Under both Part A and Part B, providers submit individual claims for payment to private contractors who make an initial determination as to what payment, if any, should be made on the claim. *See id.* § 1395ff(a)(1)–(2). A provider dissatisfied with the initial determination can bring a challenge through an administrative appeals process provided under the Medicare Act. *See id.* § 1395ff(a)–(d).

A provider may first seek a redetermination by the private contractor. *Id.* § 1395ff(a)(3). If still dissatisfied, the provider may then seek reconsideration by an independent entity under contract with HHS. *Id.* § 1395ff(b)– (c), (g). If the provider is dissatisfied with the reconsideration decision, the provider may request a hearing before an administrative law judge. *See id.* § 1395ff(b)(1), (c)(3)(C)(ii), (d)(1). The Medicare Appeals Council, which is part of the Departmental Appeals Board within HHS, provides the final level of administrative review. *Id.* § 1395ff(d)(2).

A provider that obtains a final decision from the Medicare Appeals Council is entitled to judicial review of that decision. *Id.* §§ 405(g), 1395ff(b)(1)(A). Under § 405(g), the provider may file suit in district court, and the Act mandates that "[n]o findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as" provided under the Act. *Id.* §§ 405(h), 1395ii.

## II

Prime Hospitals are sixteen acute care hospitals that are part of Prime Healthcare Services, Inc. and Prime Healthcare Foundation, a national healthcare system that owns and operates thirty-five for-profit and non-profit hospitals in ten different states. Prime Hospitals provide inpatient hospital services under Medicare Part A to patients covered under the Medicare program.

Prime Hospitals, like other Medicare providers, submit individual claims for payment to private contractors, who make initial reimbursement determinations for the inpatient hospital services provided. Prime Hospitals alleged that, although the private contractors generally processed and paid their individual claims, many of their claims for one-day inpatient stays (known as "short-stay claims") were subsequently subject to post-payment review and denied. In response, Prime Hospitals ap-

pealed the denials of these Medicare short-stay claims through the Medicare administrative appeal process.

Prime Hospitals alleged the audits of short-stay claims were not limited to Prime Hospitals but were part of a larger initiative that resulted in a substantial increase in hospital claim denials. As a result of this increase, Prime Hospitals alleged, CMS became overwhelmed by the number of hospital appeals of inpatient claim denials. Prime Hospitals' complaint states that these appeals caused "the number of appeals received . . . to soar from 1,250 per week in January 2012 to more than 15,000 per week in December 2013. The yearly number of . . . appeals more than quintupled from 59,600 appeals in 2011 to 384,151 appeals in 2013." J.A. 33.

In an effort to reduce the backlog of hospital appeals of Medicare short-stay claim denials and ease the administrative burden for all parties, CMS began offering health care providers the opportunity to resolve their eligible appeals through settlement. In its letter announcing the offer and corresponding settlement parameters, CMS indicated that it was proposing "to make a partial payment (68 percent of the net payable amount of the denied inpatient claim) in exchange for hospitals agreeing to the dismissal of any associated appeals and accept[ing] the settlement as final administrative and legal resolution of the eligible claims." J.A. 46. CMS subsequently explained in a letter to Congressman Kevin Brady that

> [t]his settlement is intended to ease the administrative burden for all parties. The settlement offers an opportunity for the government to reduce the pending appeals backlog by resolving a large number of homogeneous claims in a short period of time. In addition, the settlement offers an opportunity for hospitals to obtain payment now for rendered services, rather than waiting a consider-

able amount of time with the associated risk of not prevailing in the appeals process.

J.A. 166.

Prime Hospitals alleged that, under its settlement offer, CMS agreed to pay all such Medicare short-stay appeal claims if a hospital accepted the offer of partial payment on or before October 31, 2014, by submitting (1) a spreadsheet of eligible claims to CMS by October 31, 2014, and (2) an executed copy of the CMS administrative settlement agreement. Prime Hospitals also alleged that "[s]ubject to checking the spreadsheets to ensure that the claims were eligible Short-stay Appeal Claims, CMS expressly and unconditionally agreed to execute the settlement agreement and process the eligible claims if the Prime Hospitals accepted its offer by timely submitting the spreadsheet and an executed settlement agreement." J.A. 34.

In particular, Prime Hospitals pointed to CMS's settlement agreement where it stated that "[u]pon receipt of an Agreement executed by the Hospital, CMS will determine whether the list of appeals furnished by the Hospital matches CMS's records at each level of the administrative appeals process," and, "[i]f so, CMS will execute the Agreement," and, "[i]f not, CMS and the Hospital will use their best efforts to work together to resolve promptly any discrepancies so that a match is achieved, at which time CMS will execute the Agreement." J.A. 56; *see also* J.A. 34.

Prime Hospitals alleged that, on or before October 31, 2014, they accepted CMS's offer by each submitting a spreadsheet of their eligible Medicare short-stay appeal claims and an executed CMS administrative settlement agreement. Thus, Prime Hospitals contends that once they accepted the offer, under the terms of the settlement agreement, the agency was contractually required to pay them sixty-eight percent of the net payable amount of

their 5,079 separate Medicare appeals—a total sum equaling $23,205,245—in exchange for their agreement that the related appeals would be dismissed.

CMS ultimately refused to allow the Prime Hospitals to participate in the CMS settlement because the agency "ha[d] been made aware of one or more ongoing False Claims Act case(s) or investigation(s) involving the facilities." J.A. 37. Prime Hospitals alleged that the settlement agreement did not authorize such an exclusion. Accordingly, Prime Hospitals alleged that CMS failed to execute the settlement agreements as required and breached the agreement by failing to pay "the agreed-upon sum of $23,205,245." J.A. 35.

Based on these allegations, Prime Hospitals filed a complaint in the district court for breach of contract. In their complaint, Prime Hospitals specifically alleged that: (1) CMS offered them a settlement agreement; (2) Prime Hospitals signed and otherwise accepted the agreement; (3) CMS is estopped from claiming that its signature was required to form a binding contract; (4) CMS agreed to settle Prime Hospitals' pending Medicare administrative appeals for sixty-eight percent of the net payable amounts of those denied claims in exchange for Prime Hospitals dismissing the appeals and their acceptance of the settlements as a final administrative and legal resolution of the claims; and (5) CMS breached the agreement when it failed to pay plaintiffs the agreed-upon sum ($23,205,245).

Prime Hospitals also pleaded two other independent and alternative causes of action in their complaint. They alleged that the seven-month delay in deciding to exclude them from CMS's settlement program and the time in which the agency had allegedly improperly stayed their short-stay appeals amounted to "a secret and illegal policy to prevent and delay [Prime Hospitals] from exhausting their administrative remedies under the Medicare ap-

peals process with respect to their Medicare short-stay claim denials." J.A. 41.

In Prime Hospitals' second alternative cause of action, Prime Hospitals requested declaratory and injunctive relief from this scheme because it violated the Medicare Act and their right to procedural and substantive due process. In Prime Hospitals' third alternative cause of action for a writ of mandamus, Prime Hospitals requested an order compelling the Secretary to comply with the "clear, indisputable and non-discretionary duty to provide a Medicare appeals process for [Prime Hospitals] to administratively appeal denials of their Medicare inpatient claims within specified time frames." J.A. 43.

The Secretary filed a motion to dismiss the complaint on various grounds, including that the district court lacked subject matter jurisdiction over the hospitals' breach of contract claim because under the Tucker Act, 28 U.S.C. § 1491, the Court of Federal Claims had exclusive jurisdiction to adjudicate this claim.

The district court issued a written order that denied the Secretary's motion to dismiss but transferred the case to the Court of Federal Claims. According to the district court, the Court of Federal Claims has Tucker Act jurisdiction over the Prime Hospitals' breach of contract cause of action because it involves questions of contract formation and scope, not questions about Medicare reimbursement law. The district court also concluded that, because Prime Hospitals' second cause of action seeking declaratory and injunctive relief and third cause of action seeking a writ of mandamus depended on the resolution of the breach of contract claim, those claims also arose under contract law.

We have jurisdiction to review the district court's decision to transfer Prime Hospitals' case to the Court of Federal Claims under 28 U.S.C. § 1292(d)(4)(A).

DISCUSSION

We review a district court's decision to transfer a case under the federal transfer statute, 28 U.S.C. § 1631, to the Court of Federal Claims de novo because the district court's underlying determination is one of jurisdiction. *Acceptance Ins. Co. v. United States*, 503 F.3d 1328, 1332 (Fed. Cir. 2007). It is well settled that transfer of a case to another court is only permissible if the destination court has subject matter jurisdiction to hear the case. *Souders v. S.C. Pub. Serv. Auth.*, 497 F.3d 1303, 1307 (Fed. Cir. 2007) (citing 28 U.S.C. § 1631; *James v. Caldera*, 159 F.3d 573, 582–83 (Fed. Cir. 1998)). Accordingly, our "crucial inquiry" is whether the Court of Federal Claims has subject matter jurisdiction over the claims at issue. *Souders*, 497 F.3d at 1307.

We first discuss whether the Court of Federal Claims has jurisdiction to adjudicate Prime Hospitals' claim for breach of the alleged settlement agreement. This discussion includes two parts. First, although the Court of Federal Claims typically has Tucker Act jurisdiction over any express or implied contract with the United States, the settlement agreement at issue here arose from disputes under the Medicare Act, which has its own comprehensive administrative and judicial review scheme. We must determine, therefore, whether the Medicare Act preempts Tucker Act jurisdiction over the contract claim. We conclude that it does not. Second, because the Medicare Act's own review scheme, which places jurisdiction in the district court, provides the sole avenue for judicial review for all claims "arising under" the Medicare Act and the Supreme Court has construed the "arising under" language broadly, we must also determine whether the contract claim arises under the Medicare Act. We conclude that it does not. In sum, we hold that jurisdiction over the contract claim is proper in the Court of Federal Claims.

We also address the question of whether the Court of Federal Claims has subject matter jurisdiction over Prime Hospitals' alternative claims seeking declaratory, injunctive, and mandamus relief from the Secretary's alleged policy to prevent and delay Prime Hospitals from exhausting their administrative remedies. We conclude that it does not. We take each issue in turn.

I

A

The jurisdiction of the Court of Federal Claims is set forth in the Tucker Act, 28 U.S.C. § 1491(a), which states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

The Tucker Act, however, does not create any substantive right enforceable against the United States. *United States v. Testan*, 424 U.S. 392, 398 (1976). In order to come within the jurisdictional reach of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (citing *United States v. Mitchell* (*Mitchell II*), 463 U.S. 206, 216–17 (1983); *Testan*, 424 U.S. at 398).

Contract law is one such separate source of law compensable under the Tucker Act. 28 U.S.C. § 1491(a); *Higbie v. United States*, 778 F.3d 990, 993 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 37 (2015). The Supreme Court has also recognized non-contractual bases of Tucker Act jurisdiction, which include those claims "founded either upon the Constitution, or any Act of Congress, or

any regulation of an executive department," 28 U.S.C. § 1491(a). *Testan*, 424 U.S. at 398. In order for a non-contractual claim to be "cognizable under the Tucker Act . . . the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *Mitchell II*, 463 U.S. at 216–17 (internal quotation marks omitted). Tucker Act jurisdiction is preempted, however, when that non-contractual source of substantive law contains its own judicial review scheme. *United States v. Bormes*, 568 U.S. 6, 12 (2012). If such a remedial scheme exists, it will establish the exclusive framework for the monetary liability Congress created under the statute. *Id.*

The Medicare Act is a non-contractual source of substantive law that mandates compensation to private parties by the Federal Government. *See, e.g.*, *Appalachian Reg'l Healthcare, Inc. v. United States*, 999 F.2d 1573, 1577 (Fed. Cir. 1993) (observing that the Medicare Act provides a substantive right to money damages). It also contains its own judicial review scheme. *See Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984) (explaining that 42 U.S.C. §§ 405(h), (g), and 1395ii provide "the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act"). Accordingly, this court has held that Tucker Act jurisdiction over Medicare reimbursement claims is preempted. *St. Vincent's Med. Ctr. v. United States*, 32 F.3d 548, 550 (Fed. Cir. 1994).

There is a distinction between such non-contractual claims arising under the Constitution, a statute, or a regulation and those stemming from a contract. *Holmes v. United States*, 657 F.3d 1303, 1313 (Fed. Cir. 2011). Any express or implied contract with the United States provides an independent substantive right, enforceable in the Court of Federal Claims under the Tucker Act. *Id.* When the contract at issue, however, is a settlement agreement with the United States arising from a dispute

under a statute that has its own judicial review scheme, the question remains whether Tucker Act jurisdiction over that contract claim is nevertheless preempted.

We have addressed this question with respect to a number of settlement agreements arising from disputes under statutes having their own comprehensive review schemes and each time have concluded that the statute's review scheme does not preclude Tucker Act jurisdiction over those settlement agreements. *See, e.g.*, *Cunningham v. United States*, 748 F.3d 1172, 1179 (Fed. Cir. 2014) (Civil Service Reform Act); *Holmes*, 657 F.3d at 1312 (Title VII); *Massie v. United States*, 166 F.3d 1184, 1189 (Fed. Cir. 1999) (Military Claims Act). In each case, we have drawn a distinction between claims for which the statute provides the exclusive remedy and claims for breach of settlement that fall outside the comprehensive scheme, with Tucker Act jurisdiction extending to the latter. *See, e.g., Holmes*, 657 F.3d at 1312. This court has yet to resolve this question with respect to settlement agreements with the United States arising from reimbursement disputes under the Medicare Act. We do so today.

We begin our analysis by reviewing the relevant jurisprudence.

The Supreme Court has identified a distinction between an action on a settlement agreement and one under a law whose alleged violation gave rise to the settlement. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378–82 (1994); s*ee also Holmes*, 657 F.3d at 1311 n.5. This court and the Court of Federal Claims have since applied this distinction to conclude that settlement agreements are within the jurisdiction of the Court of Federal Claims because they fall outside of, and must be analyzed separately from, the statutory schemes from which they arose. *See, e.g., Holmes*, 657 F.3d at 1311. Relevant to our analysis, the Supreme Court has observed

that "[e]nforcement of the settlement agreement . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen*, 511 U.S. at 378. The Court has also noted that "the facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit" from which the settlement arose. *Id.* at 380.

In *Holmes*, this court held that the comprehensive statutory scheme established under Title VII was not a bar to the exercise of Tucker Act jurisdiction in a suit alleging breach of a Title VII settlement agreement. 657 F.3d at 1312. We concluded that "although the [settlement a]greements arose out of Title VII litigation, [the] suit for breach of contract is just that: a suit to enforce a contract with the government." *Id.* (citing *Kokkonen*, 511 U.S. at 378–82). In addition to relying on *Kokkonen*, the *Holmes* court also relied on this court's decisions in *Del-Rio Drilling Programs, Inc. v. United* States, 146 F.3d 1358 (Fed. Cir. 1998) and *Massie v. United States*, 166 F.3d 1184 (Fed. Cir. 1999). In *Del-Rio Drilling*, this court held that "the fact that the court may have to interpret [an] Act or make other determinations regarding principles of state and federal law in order to resolve the contract claim does not deprive the [Court of Federal Claims] of jurisdiction to decide that claim." 146 F.3d at 1367.

Likewise, in *Massie*, this court addressed whether, because the Military Claims Act (MCA) provides a complete and comprehensive statutory scheme pertaining to the payment of military claims, the Court of Federal Claims has jurisdiction over an agreement to pay an MCA claim. 166 F.3d at 1187–89. We concluded that "the MCA itself does not deprive the court of jurisdiction to hear [the contract] claim" because "the MCA does not address the breach of agreements to pay MCA claims. Nor does its legislative history shed light on this issue." *Id.* at 1188.

This court also found it to be dispositive that "Massie ha[d] not requested review of the substantive issues of the MCA claim—the existence and extent of the government's liability for Massie's injuries." *Id.* at 1189. Rather, the court noted, Massie "agrees with the Secretary's decision and seeks only to enforce the express contract embodying it." *Id.*

In *Cunningham v. United States*, this court applied the holding in *Holmes* to an agreement settling a dispute arising under the Civil Service Reform Act (CSRA) and concluded that the Court of Federal Claims possessed subject matter jurisdiction over the breach of contract claim for money damages. 748 F.3d 1172, 1178–79 (Fed. Cir. 2014). It was dispositive that the adjudication of the claim for monetary relief did not involve the review of a personnel action nor did it require the Claims Court to review the facts or law underlying the initial discrimination grievance. *Id.* at 1178–79. Further, the suit did not demand equitable relief that might require undertaking a personnel action, but rather, sought money damages to compensate for breach of the settlement agreement. *Id.*

Following our decisions in this line of cases, although the alleged settlement agreement with CMS arose from disputes under the Medicare Act, Prime Hospitals' breach of contract claim for money damages against the government falls outside of the Medicare Act's remedial scheme.[2]

---

[2]    Prime Hospitals sufficiently pleaded, for Tucker Act purposes, the requirements for a valid contract with the United States. *See* J.A. 40–41, 135–40. *See also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) ("To show jurisdiction in the Court of Federal Claims, a party must show that either an express or implied-in-fact contract underlies its claim."); *Total Med. Mgmt., Inc. v. United States*, 104 F.3d 1314, 1319

Prime Hospitals' enforcement of the settlement agreement is a separate action and not a continuation of

---

(Fed. Cir. 1997) ("The requirements for a valid contract with the United States are: a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract."). The parties do not dispute this on appeal.

"Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Do-Well Mach. Shop, Inc. v. United States*, 870 F.2d 637, 639 (Fed. Cir. 1989) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)). Nonetheless, the dissent focuses on the merits of Prime Hospitals' contract claim and argues that jurisdiction is lacking largely because, in its view, there is only a proposed settlement and no enforceable contract. But that is not a jurisdictional issue. "[T]he law is clear that, for the Court of Federal Claims to have jurisdiction, a valid contract must only be *pleaded*, not ultimately proven." *Total Med.*, 104 F.3d at 1319 (emphasis added). The dissent is not alone in its confusion. "As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action." *Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 249 (1951). Yet, as this court has recognized, "[t]he distinction between lack of jurisdiction and failure to state a claim upon which relief can be granted, is an important one." *Do-Well Mach. Shop*, 870 F.2d at 639. We hold that the Court of Federal Claims has exclusive jurisdiction over Prime Hospitals' breach of contract claim, so it is up to that court to determine whether, on the merits, Prime Hospitals has failed to state a claim upon which relief can be granted.

their underlying claims for Medicare reimbursement. *See Kokkonen*, 511 U.S. at 378. Prime Hospitals do not suggest that their contract claim is one that they should have been required to present to the agency in the first instance through the Medicare Act's own comprehensive review scheme. Nor does the language of the settlement agreement itself contemplate review under the Medicare Act's administrative review scheme. It indicates that "[a]ny dispute between the Parties under this Agreement shall be resolved by a federal court of competent jurisdiction." J.A. 57. Rather, Prime Hospitals contend the alleged settlement was brought about to end ongoing administrative disputes. They pleaded that they agreed to dismiss their appeals and accept the settlement as a final administrative and legal resolution of their claims of entitlement to Medicare benefits. In other words, Prime Hospitals' enforcement of the settlement agreement is not a continuation or renewal of their denied claims for Medicare reimbursement.

The facts to be determined with respect to Prime Hospitals' breach of contract suit are also separate from the facts determined in their underlying individual claims for reimbursement. *See Kokkonen*, 511 U.S. at 380. The facts to be determined with regard to the breach of contract suit include whether CMS offered a settlement agreement to Prime Hospitals, whether Prime Hospitals signed and otherwise accepted the agreement, whether CMS also accepted the settlement agreement, and whether CMS breached the agreement when it failed to pay Prime Hospitals the agreed-upon sum. Contrast these with facts that were likely determined for Prime Hospitals' individual claims for reimbursement. For example, under the Medicare Act, as part of an initial determination, the facts to be determined include whether the items and services the provider furnished are covered or otherwise reimbursable under the Medicare Act and what

amounts are payable for those items and services, if any. 42 C.F.R. § 405.902.

As in *Massie* and *Cunningham*, where this court found it dispositive that the claimant had not requested review of the facts or law underlying the initial MCA or CSRA dispute, Prime Hospitals are also not disputing the underlying determinations denying their reimbursement claims. Prime Hospitals have not requested review of, for example, whether the items and services they furnished are reimbursable under the Medicare Act nor have they requested review of what amounts are payable for those items and services. Rather, as in *Massie*, Prime Hospitals agree with the Secretary's decision to settle pending Medicare administrative appeals for sixty-eight percent of the net payable amounts of eligible claims as the final administrative and legal resolution of the claims and seek only to enforce the alleged contract they have with CMS memorializing this decision. *Massie,* 166 F.3d at 1189. Prime Hospitals seek the benefit of the bargain they struck with CMS. *Cunningham*, 748 F.3d at 1177 (observing that "[w]hen a plaintiff seeks to obtain the benefit of the bargain struck by the plaintiff and the government in an underlying settlement agreement, the plaintiff is enforcing a contract"). Finally, as in *Cunningham*, Prime Hospitals do not demand equitable relief through their breach of contract claim that might require undertaking an action under the Medicare Act but only money damages to compensate for breach of the settlement agreement.

To the extent that Prime Hospitals argue that their contract claim cannot fall outside of the Medicare Act's remedial scheme because determining the scope of the settlement agreement would require an application of the Medicare Act, we disagree. *See Del-Rio Drilling*, 146 F.3d at 1367. Prime Hospitals are referring to the fact that the settlement agreement provides that it is intended to resolve only "eligible claims" as defined by the settlement agreement. J.A. 54. To be eligible for settlement the

agreement requires, for example, that the claim must have been denied by any entity that conducted a review on behalf of CMS and that the hospital must have timely appealed the denial of that claim. That the settlement agreement resolves only claims for reimbursement that meet the criteria of "eligible claims," however, does not make the settlement agreement any less of a contractual undertaking by the government. *Del-Rio Drilling*, 146 F.3d at 1367.

Indeed, Prime Hospitals describe the process for determining which claims are eligible for settlement in their complaint as simply "checking the spreadsheets." J.A. 34. The language of the settlement agreement describes this process as follows: "Upon receipt of an Agreement executed by the Hospital, CMS will determine whether the list of appeals furnished by the Hospital matches CMS's records at each level of the administrative appeals process." J.A. 56; *see also* J.A. 34. Whether or not Prime Hospitals are correct that determining the scope of the contract in this manner would require an application of the Medicare Act, that the parties might have to compare spreadsheets to determine whether their records match does not remove jurisdiction from the Court of Federal Claims. As this court held in *Del-Rio Drilling*, the fact that the court may have to interpret an Act or make other determinations regarding principles of federal law in order to resolve the contract claim does not deprive the Court of Federal Claims of jurisdiction to decide that claim. 146 F.3d at 1367.[3]

---

[3]    Moreover, the issue of whether every one of Prime Hospitals' underlying individual claims is an "eligible claim[]" as defined by the settlement agreement is not part of the dispute between the parties. Indeed, Prime Hospitals concede that CMS will determine whether the list of appeals furnished by Prime Hospitals matches

In sum, following this court's precedent, we hold that Prime Hospitals' claim for monetary relief against the government alleging breach of their settlement agreement with CMS is fundamentally a suit to enforce a contract and therefore within the Court of Federal Claims' jurisdiction under the Tucker Act.

B

Having concluded that Tucker Act jurisdiction over Prime Hospitals' contract claim is not preempted, we also reject, for similar reasons, Prime Hospitals' arguments that Court of Federal Claims is precluded from reviewing their contract claim because it "arises under" the Medicare Act.

The Medicare Act's own comprehensive administrative and judicial review scheme provides the sole avenue for judicial review for all claims "arising under" the Medicare Act. *Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984); *see also St. Vincent's*, 32 F.3d at 549–50. This judicial review scheme places jurisdiction in the district courts and therefore precludes the Court of Federal Claims from reviewing reimbursement claims arising under the Medicare Act. *St. Vincent's*, 32 F.3d at 550; *Wilson ex rel. Estate of Wilson v. United States*, 405 F.3d 1002, 1010 (Fed. Cir. 2005).

The inquiry in determining whether the Medicare Act's review scheme bars jurisdiction over a claim is whether the claim at issue "arises under" the Act. *Ringer*, 466 U.S. at 615. The Supreme Court has construed the "claim arising under" language quite broadly to include any claims in which the Medicare Act provides both the standing and the substantive basis for the presentation of

---

CMS's records only "[a]ssuming that the Prime Hospitals can establish there is a contract" in the first instance. Appellant's Reply Br. 14–15.

the claims. *Ringer*, 466 U.S. at 615 (citing *Weinberger v. Salfi*, 422 U.S. 749, 760–61 (1975)). Under this broad test, the Court concluded that a claim arises under the Act when it is "at bottom, a claim that they should be paid for their" Medicare services. *Id.* at 614. *See also Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1142–43 (9th Cir. 2010) (concluding that "where, at bottom, a plaintiff is *complaining about the denial of Medicare benefits* . . . the claim 'arises under' the Medicare Act" (emphasis added)).

The Supreme Court has also held that a claim arises under the Medicare Act when it is "inextricably intertwined" with a claim for benefits. *Ringer*, 466 U.S. at 614–16. In *Ringer*, the claim was inextricably intertwined with a claim for benefits because the relief sought was a determination that the Medicare services were reimbursable under the Act. *Id.* at 614. The Third Circuit considers a claim to be inextricably intertwined "if it does not involve issues separate from the party's claim that it is entitled to benefits and/or if those claims are not completely separate from its substantive claim to benefits." *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 348 (3d Cir. 2012).

The type of remedy sought is generally not dispositive of whether the claim arises under the Medicare Act. *See, e.g.*, *Ringer*, 466 U.S. at 615 ("It is of no importance that respondents here . . . sought only declaratory and injunctive relief and not an actual award of benefits as well."). The ultimate question is whether the claim is a claim for reimbursement benefits. *See, e.g.*, *id.* (concluding that although respondents sought declaratory relief, they ultimately sought an award of benefits because "[f]ollowing the declaration which respondents seek from the Secretary . . . only essentially ministerial details will remain before respondents would receive reimbursement"). A claim that challenges a denial of reimbursement benefits, no matter how it is styled, is a claim for reimbursement benefits. *See, e.g.*, *id.* at 614; *Do Sung*

*Uhm*, 620 F.3d at 1142–43; *Midland Psychiatric Assocs., Inc. v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 487 (7th Cir. 1990).

Against this backdrop, Prime Hospitals maintain that their breach of contract claim arises under the Medicare Act because, at bottom, they are seeking reimbursement for services they provided to the Medicare beneficiaries. We disagree.

First, the Medicare Act does not provide either the standing or the substantive basis for the presentation of Prime Hospitals' claim. *Cf. RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555, 557 (5th Cir. 2004) (finding that the standing and substantive basis for claims that are based on state law, such as breach of contract claims, are clearly not provided by the Medicare Act). Their claim does not challenge the denial of benefits in each of their individual reimbursement claims. Indeed, their underlying claims must have been denied to be considered "eligible claims" under the settlement agreement. Nor do Prime Hospitals seek any declaration or determination that the services that they provided to the Medicare beneficiaries are reimbursable under the Act. They pleaded that the settlement agreement is the final administrative and legal resolution of their eligible claims, thus they seek to dismiss their claims altogether. Finally, Prime Hospitals do not challenge provisions of the Medicare Act or its regulations as having denied them benefits. Instead, they pleaded that they were denied the amount owed to them under the settlement agreement as a direct and proximate result of the Secretary's breach of the settlement agreement.

Unlike *Do Sung Uhm* where the contract claim was found to arise under the Medicare Act, in part, because the contract at issue only imposed a duty to comply with the Medicare Act itself, 620 F.3d at 1142, Prime Hospi-

tals' contract almost exclusively imposes duties on CMS that do not involve compliance with the Medicare Act. The relief Prime Hospitals seek is not reimbursement payments for services they provided to the Medicare beneficiaries in each of their individual claims. Rather, they seek to dismiss their claims altogether and receive, under contract principles, the benefit of the bargain they struck with CMS. The benefit Prime Hospitals seek, as CMS itself explained, is the bargained-for payment amount which they can receive immediately through the settlement agreement, "rather than waiting a considerable amount of time with the associated risk of not prevailing in the appeals process." J.A. 166. Prime Hospitals claim that they are owed the agreed-upon "total sum" that CMS offered to pay under the settlement agreement. J.A. 54. That Prime Hospitals also call this sum in their complaint "Medicare reimbursement" does not change the fact that the damages they seek are really the bargained-for total sum under the settlement agreement. *Brazos Elec. Power Co-op., Inc. v. United States*, 144 F.3d 784, 787 (Fed. Cir. 1998) ("Court of Federal Claims jurisdiction cannot be circumvented by such artful pleading and, accordingly, we customarily look to the substance of the pleadings rather than their form.").

Unlike the cases upon which Prime Hospitals rely, their alleged injury cannot be remedied through the retroactive payment of Medicare benefits nor can it be remedied through the Act's administrative review process. *See, e.g.*, *Do Sung Uhm*, 620 F.3d at 1143–44; *Bodimetric*, 903 F.2d at 486. Because Prime Hospitals seek the benefit of the bargain under the settlement agreement and do not challenge the Secretary's denial of their claims for payment for their Medicare services, they do not have an adequate remedy under the Medicare review scheme. *Cf. Ringer*, 466 U.S. at 617 (concluding that respondents clearly had an adequate remedy in the Medicare review scheme for challenging the Secretary's denial of their

claims).  *See also Wilson*, 405 F.3d at 1010 n.9 (clarifying that the Medicare Act does not preclude judicial review in the Court of Federal Claims when the specialized administrative and judicial review processes provided in the statute are not available).

Second, Prime Hospitals' breach of contract claim is not inextricably intertwined with their underlying claims for Medicare benefits.  Prime Hospitals' breach of contract claim involves separate issues and is completely separate from a substantive claim to benefits.  *See Nichole Med.*, 694 F.3d at 348.  Also, unlike the cases upon which Prime Hospitals rely, hearing their breach of contract claim will not mean reviewing the merits of the underlying reimbursement claims decisions.  *See, e.g.*, *Midland*, 145 F.3d at 1004.  *Cf. Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1114–15 (9th Cir. 2003) (concluding that the only claims that do not arise under the Medicare Act are the defamation and invasion of privacy claim, because the alleged facts are largely independent of the underlying Medicare law).

In particular, Prime Hospitals' breach of contract claim involves issues such as whether CMS offered a settlement agreement to Prime Hospitals, whether Prime Hospitals and CMS both accepted the settlement agreement, and whether CMS breached the agreement when it failed to pay Prime Hospitals the agreed-upon sum. These issues are separate from those that would arise in a substantive claim of entitlement to benefits, such as, whether the items and services Prime Hospitals furnished are covered or otherwise reimbursable under the Medicare Act and what amounts are payable for those items and services, if any.  42 C.F.R. § 405.902.  Importantly, Prime Hospitals do not challenge any such findings as they do not challenge the denials of their underlying individual reimbursement claims.  Rather, Prime Hospitals have alleged that their claims of entitlement to Medicare benefits are fully resolved, both administrative-

ly and legally, by the settlement agreement, and they seek payment only under the alleged contract.

In support of their argument that their breach of contract claim arises under the Medicare Act, Prime Hospitals centrally rely on *Pines Residential Treatment Center, Inc. v. United States*, 444 F.3d 1379 (Fed. Cir. 2006). This case, however, is readily distinguishable.

Pines Residential, an operator of a hospital, entered into a written settlement agreement with a Medicare Intermediary who agreed to allow a loss of an agreed-upon amount and issue a revised notice of program reimbursement reflecting this allowance. *Id.* at 1380. The Intermediary then complied with the settlement agreement and issued revised notices reflecting the agreed-upon loss and stating that a check would be issued if payment were due. *Id.* Before the Court of Federal Claims, the government provided evidence showing that Pines Residential did not receive any payment because the Intermediary had offset the agreed-upon loss amount against an overpayment. Brief for Defendant-Appellee at 11, Pines Residential Treatment Ctr., 444 F.3d 1379 (Fed. Cir. Aug. 31, 2005) (No. 05-5102), 2005 WL 2477446 at *11. Thus, the only issue that could be litigated, the government argued, was whether the offset decision was proper and appropriate according to the Medicare statutes and regulations. *Id.* at *35. This court affirmed the Court of Claims' finding that it was without jurisdiction to hear Pines Residential's claim because, although styled as a breach of contract claim, it was, at a minimum, inextricably intertwined with a claim for Medicare reimbursement. *Pines*, 444 F.3d at 1381. Determining whether the offset claimed by the government was proper would require application of the provisions of the Medicare Act. *Id.*

Unlike Pines Residential's settlement agreement, which did not entitle it to payment, here, Prime Hospitals'

alleged settlement agreement entitles them to a total sum in exchange for dismissing their eligible reimbursement appeals. Also unlike *Pines* where the parties disagreed as to whether the payment owed was properly applied to an overpayment under the applicable Medicare regulations, here, Prime Hospitals and the government only dispute whether or not a contract was formed between Prime Hospitals and CMS. They do not disagree as to, or even discuss, the merits of Prime Hospitals' individual reimbursement claims from which the alleged settlement agreement arose. Thus, unlike *Pines*, where determining whether any payment was due to Pines Residential would almost exclusively require resolving questions under the Medicare Act, here determining whether Prime Hospitals are entitled to the total sum payment in exchange for dismissing their eligible reimbursement appeals requires an analysis of whether a contract was formed under contract principles.

In sum, Prime Hospitals' breach of contract claim does not arise under the Medicare Act because they do not seek reimbursement for services provided to Medicare beneficiaries. It is contract law, and not the Medicare Act, that provides both the standing and the substantive basis for the presentation of Prime Hospitals' breach of contract claim. Also, Prime Hospitals' enforcement of their settlement agreement is not inextricably intertwined with their underlying claims for Medicare benefits because their claim involves separate issues and is completely separate from a substantive claim that they are entitled to benefits.

Prime Hospitals' breach of contract claim is just that: a suit to enforce a contract with the government, and it does not arise under the Medicare Act.

## II

We turn now to Prime Hospitals' remaining claims for declaratory, injunctive, and mandamus relief. Prime

Hospitals and the government do not dispute that the Court of Federal Claims does not have jurisdiction to adjudicate these claims. Indeed, the government had not asked the district court to transfer these claims but had sought dismissal on other grounds. We conclude that the Court of Federal Claims lacks jurisdiction over Prime Hospitals' remaining claims.

The Tucker Act does not generally confer jurisdiction for actions seeking declaratory or injunctive relief. *See Richardson v. Morris*, 409 U.S. 464, 456 (1973). Although, as the government identifies, there are a limited number of statutory exceptions to that rule, none are applicable here. Similarly, the Court of Federal Claims does not have jurisdiction to issue a writ of mandamus pursuant to 28 U.S.C. § 1361. *See Hornback v. United States*, 405 F.3d 999, 1002 (Fed. Cir. 2005) ("28 U.S.C. § 1361 vests 'original jurisdiction' for the issuance of mandamus orders in the district courts.").

Accordingly, we conclude that the Court of Federal Claims does not have jurisdiction over Prime Hospitals' remaining claims and we reverse the district court's order transferring Prime Hospitals' claims for declaratory, injunctive, and mandamus relief. *Cf. United States v. Cty. of Cook, Ill.*, 170 F.3d 1084, 1089 (Fed. Cir. 1999) ("Section 1631 allows for the transfer of less than all of the claims in a civil action to the Court of Federal Claims.").

CONCLUSION

For the foregoing reasons, we hold that the Court of Federal Claims has exclusive jurisdiction under the Tucker Act, 28 U.S.C. § 1491, over Prime Hospitals' breach of contract claim but does not have jurisdiction over their remaining claims. Accordingly, we affirm the district court's transfer order with respect to the breach of contract claim but reverse with respect to Prime Hospitals' remaining claims seeking declaratory, injunctive,

and mandamus relief.  We remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

COSTS

The parties shall bear their own costs.

# United States Court of Appeals for the Federal Circuit

_____

ALVARADO HOSPITAL, LLC, A DELAWARE
LIMITED LIABILITY COMPANY, DBA ALVARADO
HOSPITAL MEDICAL CENTER, VERITAS HEALTH
SERVICE, INC., A CALIFORNIA CORPORATION,
DBA CHINO VALLEY MEDICAL CENTER, DESERT
VALLEY HOSPITAL, INC., A CALIFORNIA
CORPORATION, DBA DESERT VALLEY
HOSPITAL, PRIME HEALTHCARE CENTINELA,
LLC, A DELAWARE LIMITED LIABILITY
COMPANY, DBA CENTINELA HOSPITAL
MEDICAL CENTER, PRIME HEALTHCARE -
ENCINO HOSPITAL, LLC, A DELAWARE LIMITED
LIABILITY COMPANY, DBA ENCINO HOSPITAL
MEDICAL CENTER, PRIME HEALTHCARE
SERVICES - GARDEN GROVE, LLC, A DELAWARE
LIMITED LIABILITY COMPANY, DBA GARDEN
GROVE HOSPITAL MEDICAL CENTER, PRIME
HEALTHCARE HUNTINGTON BEACH, LLC, A
DELAWARE LIMITED LIABILITY COMPANY, DBA
HUNTINGTON BEACH HOSPITAL, PRIME
HEALTHCARE LA PALMA, LLC, A DELAWARE
LIMITED LIABILITY COMPANY, DBA LA PALMA
INTERCOMMUNITY HOSPITAL, PRIME
HEALTHCARE SERVICES - LOW BUCK LLC, A
DELAWARE LIMITED LIABILITY COMPANY, DBA
LOWER BUCKS HOSPITAL, PRIME HEALTHCARE
SERVICES - MONTCLAIR, LLC, A DELAWARE
LIMITED LIABILITY COMPANY, DBA
MONTCLAIR HOSPITAL MEDICAL CENTER,
PRIME HEALTHCARE PARADISE VALLEY, LLC, A
DELAWARE LIMITED LIABILITY COMPANY, DBA
PARADISE VALLEY HOSPITAL, PRIME

**HEALTHCARE SERVICES - ROXBOROUGH, LLC, A
DELAWARE LIMITED LIABILITY COMPANY, DBA
ROXBOROUGH MEMORIAL HOSPITAL, PRIME
HEALTHCARE SERVICES - SAN DIMAS, LLC, A
DELAWARE LIMITED LIABILITY COMPANY, DBA
SAN DIMAS COMMUNITY HOSPITAL, PRIME
HEALTHCARE SERVICES - SHASTA, LLC, A
DELAWARE LIMITED LIABILITY COMPANY, DBA
SHASTA REGIONAL MEDICAL CENTER, PRIME
HEALTHCARE SERVICES - SHERMAN OAKS, LLC,
A DELAWARE LIMITED LIABILITY COMPANY,
DBA SHERMAN OAKS HOSPITAL, PRIME
HEALTHCARE ANAHEIM, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
DBA WEST ANAHEIM MEDICAL CENTER,**
*Plaintiffs-Appellants*

**v.**

**NORRIS COCHRAN, ACTING SECRETARY OF
HEALTH AND HUMAN SERVICES,**
*Defendant-Appellee*

————————————————

2016-1356

————————————————

Appeal from the United States District Court for the Central District of California in No. 2:15-cv-06312-R-PLA, Judge Manuel L. Real.

————————————————

NEWMAN, *Circuit Judge*, dissenting.

I respectfully dissent from the ruling that the Medicare Act's jurisdictional assignment to the district courts does not apply when there is an offer of settlement of a Medicare reimbursement claim. This explicit statutory assignment is not erased if the Medicare administrator

offers to settle a Medicare claim. The jurisdictional statute is clear, and precedent has long implemented its terms:

> Any individual, after any final decision of the [Secretary of HHS] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the [Secretary] may allow. **Such action shall be brought in the district court of the United States** for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

42 U.S.C. § 1395ff(b)(1)(A), from the Medicare Act (incorporating 42 U.S.C. § 405(g), from the Social Security Act) (emphasis added). The courts have consistently agreed. In *St. Vincent's Medical Center v. United States,* we cited extensive authority concerning the statute:

> Because the Medicare Act contains its own comprehensive administrative and judicial review scheme, there is no Tucker Act jurisdiction over Medicare reimbursement claims. Courts have consistently found preemption of Tucker Act jurisdiction where Congress has enacted a precisely drawn, comprehensive and detailed scheme of review in another forum, as in the present case. *See, e.g., United States v. Fausto,* 484 U.S. 439, 454–55 (1988); *Harris v. United States,* 841 F.2d 1097, 1100–01 (Fed. Cir. 1988); *Fiorentino v. United States,* 607 F.2d 963, 969–70 (Fed. Cl. 1979). In fact, we recently held in *Appalachian Regional Healthcare, Inc. v. United States,* 999

F.2d 1573, 1577 (Fed. Cir. 1993) (citations omitted), that "when the Medicare statute specifically provides for review, providers and courts must follow the specified procedures."

32 F.3d 548, 549–50 (Fed. Cir. 1994) (parallel citations and footnote omitted). The Supreme Court explained such jurisdictional assignments in *United States v. Bormes*:

> The Tucker Act is displaced . . . when a law assertedly imposing monetary liability on the United States contains its own judicial remedies. In that event, the specific remedial scheme establishes the exclusive framework for the liability Congress created under the statute.

568 U.S. 6, 12 (2012) (discussing the Fair Credit Reporting Act).

Nonetheless, my colleagues endorse the transfer of this action from the district court to the Court of Federal Claims under the Tucker Act, reasoning that the statutory assignment of Medicare jurisdiction does not apply when the issue includes a proposal for settlement of a Medicare claim. However, as precedent has resolved, settlement of a Medicare claim does not remove the statutory Medicare Act jurisdiction. *See Pines Residential Treatment Ctr., Inc. v. United States*, 444 F.3d 1379 (Fed. Cir. 2006) (holding that Tucker Act jurisdiction is inappropriate when a settlement agreement "is inextricably intertwined with a benefits claim" over which the Claims Court lacks jurisdiction). *Pines Residential* dealt with the asserted breach of a settlement agreement for a Medicare claim, and this court held that the Court of Federal Claims lacks jurisdiction, for "there is no Tucker Act jurisdiction over Medicare reimbursement claims." *Id.* at 1381 (quoting *St. Vincents Med. Ctr.*, 32 F.3d at 549–50).

The court today ratifies the jurisdictional anomaly proposed by the Medicare administrators at HHS, whereby a denied Medicare claim can be reviewed only in the district court under the Medicare Act, but a proposal to settle a Medicare claim can be reviewed only in the Court of Federal Claims under the Tucker Act. The provisions of the Medicare Act, and precedent of the Supreme Court, the Federal Circuit, the Court of Federal Claims, and the district courts are contrary to the position today of HHS, now endorsed by my colleagues. [1]

### *These Medicare Act claims relating to "short-stay" hospital costs were proposed for settlement by Medicare administrators*

These Medicare reimbursement claims relate to hospital costs for procedures that the Medicare administra-

---

[1]    The jurisdictional inquiry is not whether a valid contract was pleaded, but whether the issues in dispute are preempted by the jurisdictional provision of the Medicare Act. It is not disputed that this action arises under the Medicare Act, as the pleadings state, citing 42 U.S.C. §§ 1395ff(b)(1)(A) and 405(g). J.A. 40. The panel majority now bifurcates this appeal, assigning some aspects of the denied Medicare claims to the Court of Federal Claims, while returning other aspects to the district court; that is, returning the requests for declaratory, injunctive, and mandamus relief regarding adjudication of the denied claims. Aside from valid concerns of judicial economy, these claims relate to the same denied claims and are brought under the same review provisions of the Medicare Act, and Prime Hospitals' requested remedy is the receipt of compensation for provided services under the proposed Medicare settlement that the government refused to accept or ratify. J.A. 40, 43.

tors held should have been conducted on an out-patient basis. Thousands of short-stay hospital claims were denied—Prime Hospitals says in an administrative policy shift—and were appealed through the prescribed Medicare administrative process. A large backlog of appeals ensued, and in August 2014 HHS proposed to settle short-stay claims by paying 68 percent of the eligible amounts determined in accordance with a seven-factor test. J.A. 59. An HHS official sent Prime Hospitals a proposed Administrative Agreement stating the settlement conditions; the accompanying letter stated that the "Parties' obligations under the agreement become binding upon execution of the Administrative Agreement." J.A. 57.

Prime Hospitals executed the Agreement and provided the requested eligibility information. However, the HHS official then refused to countersign the Agreement, stating that there was an ongoing False Claims Act investigation related to Prime Hospitals' short-stay claims.[2] Prime Hospitals then filed this suit in the dis-

---

[2] The court states at its footnote 2 that "the parties do not dispute" that "a government representative . . . entered or ratified the agreement." That is incorrect. This dispute arose because the government representative refused to enter or ratify the proposed settlement agreement. This refusal was explicit, the Medicare representative stating that the Prime Hospitals were no longer able to participate in the proposed settlement because the agency "has been made aware of one or more ongoing False Claims Act case(s) or investigation(s) involving the facilities." J.A. 37. The Secretary continues to assert the absence of a valid contract in this appeal. *See* Appellee's Br. 9 (stating that "HHS had never signed the settlement agreement, meaning that the government had never assented to the purported deal.").

trict court, requesting that HHS either proceed with the proposed settlement or resolve the separate administrative appeals. HHS then took the position that the district court did not have jurisdiction, and moved for transfer to the Court of Federal Claims. The district court transferred the case; this appeal is from that transfer.

### *Medicare Act reimbursement claims are reviewed under the Medicare Act, not the Tucker Act*

Although my colleagues on this panel appear to recognize that the Medicare Act placed judicial review of Medicare claims exclusively in the district courts, they hold that when there is an issue related to a proposed settlement, only the Court of Federal Claims has jurisdiction. However, the Tucker Act cannot displace the explicit jurisdictional assignment in the Medicare Act.[3] As stated in *Bormes*, the Supreme Court has "consistently held that statutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act." 568 U.S. at 13. *See also Wilson ex rel. Est. of Wilson v. United States*, 405 F.3d 1002, 1015 (Fed. Cir. 2005) (Because "the Medicare Act contains its

---

[3]   The legislative history of the Medicare Act shows that Congress considered, and rejected, concurrent jurisdiction in the Court of Claims. The rejected provision stated, "The district courts of the United States shall have original jurisdiction, concurrent with the Court of Claims, of any civil action or claim of a carrier, a provided [sic] of services, or a State against the United States founded upon this Act." H.R. 4351, 89th Cong. § 341 (1965). The clear intent of Congress to place jurisdiction in the district courts, through its repudiation of an attempt to place jurisdiction in the Court of Claims, should be respected.

own comprehensive administrative and judicial review scheme which was available to Ms. Wilson, Congress has expressly placed jurisdiction elsewhere, and there is no Tucker Act jurisdiction . . . ." (internal quotation marks and citation omitted) (quoting *Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1573 (Fed. Cir. 1996))). The purported authority cited by my colleagues does not hold otherwise.

### *The Medicare Act incorporated the judicial review provisions of the Social Security Act.*

The Medicare Act and the Social Security Act are explicit that judicial review is placed in the district courts, but is not under 28 U.S.C. § 1331 (federal question jurisdiction) or § 1346 (Little Tucker Act). Both statutes include the same provision:

> No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 1395ii (incorporating 42 U.S.C. § 405(h), from the Social Security Act).

The "arising under" provision of the Medicare Act does not exclude settlement, or proposals for settlement, of Medicare claims. 42 U.S.C. § 405(h) ("No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.")

Precedent guides the determination of whether a claim "arises under" the Medicare Act. See *Heckler v. Ringer*, 466 U.S. 602, 614 (1984) (inquiring whether a claim is "anything more than, at bottom, a claim" for

Medicare benefits). In *Ringer*, the Secretary had denied payment for a medical procedure, and the Court held that "the inquiry in determining whether section 405(h) bars federal-question jurisdiction must be whether the claim 'arises under' the Act." *Id.* at 615. The Court explained that a "claim arising under" includes "any claim in which 'both the standing and the substantive basis for the presentation' of the claims" is the Medicare Act, and reaffirmed that the same approach is appropriate under the Medicare Act and the Social Security Act. *Id; see also Weinberger v. Salfi*, 422 U.S. 749, 760–61 (1975) (comparing arising under jurisdiction under the Medicare Act and the Social Security Act).

The Medicare Act provides both the standing and substantive basis for Prime Hospitals' claim. The issues are not "separate from those that would arise in a substantive claim of entitlement to benefits." Maj. Op. 24. The proposed Administrative Agreement contains ongoing obligations of eligibility determinations, not merely an exercise in contract enforcement. The proposed settlement is not simply enforcement of a contracted-for lump sum payment, as the majority describes it. The proposed settlement would require individual review of the eligibility of each claim, before the 68 percent payment would be authorized. Like the claim in *Pines Residential*, the Prime Hospital settlement proposal is "inextricably intertwined" with the eligibility of each individual claim, measured by "application of the provisions of the Medicare Act." *Pines Residential*, 444 F.3d at 1381.

The "Settlement Instructions" state that "CMS is requiring each facility to complete a spreadsheet of claims it believes to be eligible for inclusion." J.A. 47. This eligibility process is not simply where "parties might have to compare spreadsheets to determine whether their records match," quoting the panel majority. Maj. Op. 19. Each claim requires review for eligibility, including whether the "claim was not for items/services provided to a Medicare

Part C enrollee," whether "the claim was denied by an entity who conducted review on behalf of CMS," whether "the claim was denied based on inappropriate patient status," whether "the denial was timely appealed by the hospital," and whether "the provider did not receive payment for the services as a Part B claim ('rebill')." J.A. 47–8. This is not a "simple" contract enforcement proceeding, as the majority holds. Maj. Op. 19.

The HHS proposal to settle short-stay Medicare claims does not dissolve the settled judicial review provision of the Medicare Act.

### *The panel majority's purported authority does not override the Medicare Statute*

The HHS and my colleagues have cited purported authority from other statutes and other facts, while ignoring the Medicare statute and direct precedent. For example, in *Holmes v. United States,* 657 F.3d 1303, 1312 (Fed. Cir. 2011), cited by my colleagues, the court held that damages for breach of a Title VII settlement agreement, described as a "straightforward contract dispute," could be obtained in the Court of Federal Claims. *Holmes* presented no issue of a proposed but unsigned contract. Furthermore, the issue here requires application of the Medicare regulations, an inquiry beyond a straightforward contract dispute.

My colleagues also rely on *Massie v. United States*, 166 F.3d 1184 (Fed. Cir. 1999), a case arising under the Military Claims Act, where the parties had an executed settlement agreement, and the court held that recovery on the contract could be obtained in the Court of Federal Claims. The court stated that Massie "agrees with the Secretary's decision and seeks only to enforce the express contract embodying it." *Id.* at 1189. Unlike *Massie*, HHS not only denied the Hospitals' claims but declined to sign its proposed settlement agreement.

The panel majority also cites *Cunningham v. United States*, 748 F.3d 1172 (Fed. Cir. 2014), where the parties had entered into a consent decree under the Civil Service Reform Act; this court stated that "Mr. Cunningham's suit does not require the Claims Court to review the facts or law underlying his initial discrimination grievance against OPM," and held that the consent decree was enforceable under the Tucker Act. Again, there was a signed, completed contract, and the underlying claims had been resolved, eliminating the possibility of further agency involvement.

The majority cites *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358 (Fed. Cir. 1998), to argue that the Court of Federal Claims is not deprived of jurisdiction by "the fact that the court may have to interpret [an] Act or make other determinations regarding principles of state and federal law in order to resolve the contract claim." *Id.* at 1367. However, the question is not whether the Court of Federal Claims is "deprived of" its general Tucker Act jurisdiction; the question is whether the district court is deprived of its statutory assignment of jurisdiction of Medicare Act claims.

I take note of the court's citation of *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994), to support the conclusion that "[e]nforcement of the settlement agreement, however, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." Maj. Op. 13–14. This case, concerning enforcement of an insurance settlement, does not override the Medicare Act's jurisdictional statute. Here, the required basis exists, for the Medicare statute is written to encompass such routine disputes as settlement of a Medicare claim under its "arising under" jurisdiction.

In all of the cases in which contract enforcement was implemented by the Court of Federal Claims, the court relied on the completeness of the contract claim and the absence of continuing agency involvement in the enforcement. In contrast, here the proposed Medicare short-stay claim settlement requires Medicare Act determination of seven factors of eligibility of each claim. These cases do not support elimination of the Medicare Act's assignment of jurisdiction to the district court.

### *The Court of Federal Claims, the district courts, and other circuits have recognized the statutory Medicare Act jurisdiction*

The Court of Federal Claims has addressed the issue of its jurisdiction, and recognized that it does not have jurisdiction for proposed settlements of Medicare claims. In *Bloomington Hosp. v. United States*, 29 Fed. Cl. 286 (Fed. Cl. 1993), the court was presented with a situation similar to that of Prime Hospitals. The Secretary made a settlement offer to several hospitals, related to a dispute over the computation of the average per diem cost of routine patient health care. The settlement was offered to "any hospitals that have such appeals properly pending at the administrative level or before the Courts," *id.* at 290, but Bloomington Hospital had not timely filed its appeal. The court observed that "settlement or compromise agreements are contractual in nature," *id.* at 293, but ruled that the Medicare Act placed the issue in the district court, stating:

> Although plaintiffs describe their claim as a "contract dispute," the subject matter of the purported underlying contract is wholly based on a Medicare reimbursement dispute. Therefore, notwithstanding this court's ability to exercise jurisdiction when a settlement agreement or contract with the federal government is at issue, it is clear that plaintiffs are merely seeking a redetermination of

> a continuing Medicare reimbursement dispute. Thus, this court is without jurisdiction because Congress has explicitly provided that Medicare reimbursement disputes are to be heard solely in the district courts.

*Id.* This ruling comports with those of all other courts, that the Medicare Act assigned these issues to the district courts. The new position of HHS is untenable, and should not be endorsed by this court.

A district court addressed Medicare Act jurisdiction in *Caregivers Plus, Inc. v. Thompson*, 311 F. Supp. 2d 728 (N.D. Ind. 2004), and held that it possessed the standing and substantive basis for a claim that a Medicare fiscal intermediary breached a Medicare settlement agreement. *Id.* at 734. Although the suit in the district court was dismissed on the basis that the administrative process had not been exhausted, the opinion does not hint that jurisdiction belongs in the Court of Federal Claims. The district court remarked on the Medicare Act's "exclusive procedure for review," and cited *Bodimetric Health Services v. Aetna Life & Casualty*, 903 F.2d 480, 487 (7th Cir. 1990), where the dispute was "inextricably intertwined with [an] initial benefits determination," for elaboration of the "kinds of decisions that must proceed, if at all, through the Medicare Act's exclusive procedure for review." *Caregivers Plus*, 311 F. Supp. 2d at 734.

The panel majority cites *RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555 (5th Cir. 2004) for a ruling that state-law contract claims do not provide standing or a substantive basis under the Medicare Act. Maj. Op. 22. *RenCare* was a dispute between a provider and a Health Maintenance Organization (HMO)—private parties in which "the government had no financial interest." *Id.* at 558. The Fifth Circuit found that the claims did not arise under the Medicare Act because "[a]t bottom, RenCare's claims are claims for payment pursuant to a

contract between private parties," since neither "enrollees nor the government hav[e] any financial interest in the resolution of this dispute." *Id.* at 559. Here, where the claim is one for Medicare reimbursement benefits between a provider and the government, *RenCare* illustrates the statutory distinctions.

Also informative is *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134 (9th Cir. 2010), where the district court considered whether a breach of contract claim against a Medicare contractor arose under the Medicare statute, and held that a dispute falls under the Medicare Act "where at bottom, a plaintiff is complaining about the denial of Medicare benefits." Maj. Op. 21 (citing *Do Sung Uhm*, 620 F.3d at 1142–43). In its district court complaint, Prime Hospitals requested the remedy of "Medicare reimbursement of their Short Stay Appeal claims in an amount according to proof at trial, and interest on said amount at the maximum rate permitted by law." J.A. 43. Such a remedy is indicative of a "concealed claim for benefits" arising under the Medicare Act. *See Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1112 (9th Cir. 2003) (noting that cases do not need to claim specific Medicare benefits or reimbursements to arise under Medicare). As in *Ringer*, when a claim is ultimately one for benefits under the Medicare Act, Medicare Act jurisdiction applies. *Ringer*, 466 U.S. at 614–17.

### *The lengthy experience with the Social Security Act also guides Medicare Act jurisdiction*

The Social Security Act jurisdictional provisions are incorporated into the Medicare Act. We have found no

case where a settlement of Social Security benefits was removed from the jurisdiction of the district court.[4]

CONCLUSION

These holdings, that the Court of Federal Claims does not have jurisdiction of a fully executed Medicare settlement, resolve the question of whether the Court of Federal Claims has jurisdiction of a proposed, non-executed settlement. The Medicare Act dictates the path of judicial review of Medicare claims, whether the review is of a denied claim, or a proposal to settle a claim.

Prime Hospitals' claim arises under the Medicare Act, whether viewed as an appeal of denied reimbursement, or as related to the proposed settlement terms for eligible claims. Precedent reinforces that this case belongs in the district court. From my colleagues' contrary conclusion, I respectfully dissent.

---

[4]    The majority states at its footnote 2 that the question before the Court of Federal Claims is whether the proposed settlement agreement meets the Federal Rule 12(b)(6) standard of stating a claim on which relief can be granted. That is not the issue of jurisdiction in this case. The issue is not whether there is an enforceable settlement agreement; the issue is whether the Medicare Act's assignment of jurisdiction to the district court includes the issues raised on this denial of reimbursement.